Miller-Dunn Company v. Commissioner.
Miller-Dunn Co. v. Commissioner
Docket No. 3632.
United States Tax Court
1946 Tax Ct. Memo LEXIS 251; 5 T.C.M. (CCH) 114; T.C.M. (RIA) 46052; February 28, 1946
*251 Albert B. Bernstein, Esq., and Jas. I. Keller, Jr., C.P.A., 1405-1419 Security Bldg., Miami, Fla., for the petitioner. F. L. Van Haaften, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This controversy originally involved income, declared value excess-profits and excess-profits taxes as follows: Fiscal
Year
Declared
Ending
Value Ex-
Excess
April 30
Income
cess-Profits
Profits
1941
$ 51.55
$ 47.53
1942
1,128.51
774.85
$ 2,327.25
1943
528.29
19,980.13 However, petitioner has abandoned all assignments of error with respect to the fiscal year ended April 30, 1941, and respondent, on brief, concedes error in disallowing $2,705, claimed as a deduction for the fiscal year ended April 30, 1943, as additional salary or bonus paid to others than W. F. Miller. The determined deficiencies for 1941 are, therefore, affirmed, and effect to the latter concession will be given in the recomputation under Rule 50. The only issue, therefore, submitted here is whether respondent erred in disallowing as deductions $5,690 for the fiscal year ended April 30, 1942, and $8,370 for the fiscal year ended April 30, 1943, paid *252 to W. F. Miller, petitioner's former president. Findings of Fact Petitioner is a corporation organized in 1916, engaged in the manufacture of a diving hood. Its Federal tax returns for the periods involved were filed with the collector of internal revenue for the district of Florida on the basis of a fiscal year ending April 30. Petitioner originally had outstanding 120 shares of stock. As a result of a stockholders' meeting of July 13, 1941, the outstanding shares were reduced to 90, by the cancellation of 30 shares. The stockholders at that time were: Minnie E. Mason
55 shares
W. S. Dunn
30 shares
C. Roy Miller
3 shares
W. F. Miller
1 share
B. B. Carlton
1 share
On January 9, 1942, the Rellim Corporation, of which W. F. Miller was the sole stockholder, acquired the 30 shares formerly held by SW S. Dunn. C. Roy Miller is the son of W. F. Miller and the nephew of Minnie E. Mason. The diving hood manufactured by petitioner was the invention of its president, W. F. Miller, upon which he was issued a patent. The date of the expiration of the patent does not definitely appear, but it was shortly after the war started. The diving hood consisted of a pump *253 and hood, and could be used by anyone without experience. It was used mostly in shallow waters of 30 or 40 feet depth in connection with repair work on ships and to clean out harbors. Over the years, W. F. Miller made improvements to the unit and the machinery used in its construction. In the early years, the Navy used about 50 per cent of petitioner's output, but in the tax periods involved, the Navy took practically the entire output. Prior to 1940, the petitioner's average receipts from sales were between $3,000 and $5,000 per year. For the fiscal year ended April 30, 1941, these receipts increased to $34,335; for the year ended April 30, 1942, to $104,644.79; and in the fiscal year ended April 30, 1943, reached a total of $234,673.57. The total salaries paid to petitioner's officers, exclusive of the amounts paid to W. F. Miller, in the fiscal years ended April 30, 1942 and 1943 were $4,730 and $10,635, respectively. Until 1935 or 1936, W. F. Miller, petitioner's president, drew no salary, and thereafter until the fiscal year beginning in 1941 drew a salary of only $800 per year. On March 30, 1941, W. F. Miller suffered a stroke and was confined to his bed until his death in August *254 1943. In about 1932 or 1933, W. F. Miller became blind. Despite this affliction he was able to carry on his work on the unit by touch, and give instructions as to the changes he wanted made. On March 31, 1941, C. Roy Miller came to Miami from Daytona Beach and took over the office of president of petitioner although he had not previously been connected therewith. Sometime prior to April 28, 1942, C. Roy Miller, as president of petitioner, felt that the corporation should reward W. F. Miller for the services he had rendered petitioner over the prior years in which he drew no salary or only a small salary. He determined a fair amount would be a so-called "royalty" $10of per diving unit manufactured. He discussed the matter with B. B. Carlton, secretary-treasurer and a director, and with Minnie E. Mason, a director and largest stockholder, who gave their approval to such plan. W. S. Dunn, another director, who had previously sold his interest, did not thereafter take any active part. No formal resolution accepting the plan was adopted. No minutes at all appear in petitioner's minute book during the period April 8, 1933 to May 1941. On April 28, 1942, there was placed on the petitioner's *255 books, for the first time, a charge for "royalties" and a credit to the account of W. F. Miller of $10 per unit for each unit manufactured during the fiscal year ended April 30, 1942. In the next fiscal year, the charge was computed monthly. Against the personal account of W. F. Miller were charged bills for his illness as they arose. In petitioner's tax return for the fiscal year ended April 30, 1942, a deduction of the amount of $5,690, and in the fiscal year ended April 30, 1943, a deduction of $8,370, were claimed as "royalties" paid. The respondent disallowed both amounts. The disallowance was explained as follows: It has been determined that no deduction is allowable for any royalties to W. F. Miller. The amounts of $5,690 and $8,370 were paid by petitioner to W. F. Miller in the respective fiscal years ended April 30, 1942 and 1943 as compensation for services actually rendered by him to petitioner in prior years, and were reasonable in relation to such services. Opinion The only question is whether the amounts paid by petitioner to its former president, W. F. Miller, in the taxable fiscal years ending April 30, 1942 and 1943, constituted compensation paid to him for *256 services actually rendered to petitioner. If so, such amounts are deductible as ordinary and necessary expenses of its business. Section 23 (a) (1) (A), Internal Revenue Code. The controversy as to this issue apparently arises from the fact that petitioner, on its Federal tax returns, claimed the deductions as "royalties" and had so entered the payments on its corporate records. The patent of W. F. Miller, covering the diving hood manufactured by petitioner, expired prior to the arrangement respecting the so-called "royalties", and the respondent was justified in disallowing the deductions as royalties. It is the general rule that liability to pay royalties terminates on the expiration of the patent. Pressed Steel Car Co. v. Union Pacific R. Co., 270 Fed. 518. Petitioner concedes the use of the term "royalties" was inappropriate, but says it was due to lack of experience and knowledge on the part of C. Roy Miller, who took over the office of president because of the sudden and serious illness of his father, W. F. Miller. Petitioner now contends that the amounts were properly paid as compensation for the services actually rendered to petitioner by *257 W. F. Miller during the years for which he received no salary at all, or received a small and inadequate one. Mere nomenclature, of course, is not decisive. Does this record establish the fact that the amounts in question were actually paid its president as compensation for past services? We think the testimony justifies our answering in the affirmative. Clearly, it was the enterprise, energy and brains of W. F. Miller which had developed and improved the diving hood. It was this invention of his that enabled petitioner to meet a demand created by the war, which resulted in an unusually large financial return to petitioner. Although the monopoly resulting from patent protection had ceased, nevertheless the experience gained during its life placed petitioner in a strategic position to capitalize on the invention. W. F. Miller was the individual responsible for this achievement. The petitioner was acting well within its rights in recognizing its debt to W. F. Miller, in an amount that would be reasonable under the circumstances. In view of the petitioner's earnings and the fact that the directors, with the knowledge of the stockholders, fixed an amount they deemed proper, we should not *258 interfere unless the amounts paid were obviously excessive. Lucas v. Ox Fibre Brush Co., 281 U.S. 115. The respondent makes much of the fact that the action of the board was informal and not evidenced by resolution. But it has been frequently recognized that in small corporations, lack of formality furnishes no basis for a denial. Cf. Brampton Woolen Co. v. Commissioner, 45 Fed. (2d) 327; Reub Isaacs & Co., Inc., 1 B.T.A. 45. Respondent also relies upon the case of Snyder & Berman, Inc., 41 B.T.A. 1180; aff'd, 116 Fed. (2d) 165. Our decision there, however, was based upon the fact that the evidence failed to establish that the services rendered in earlier years by a former officer and employee were of sufficient value to merit the additional compensation paid him in the taxable years in which he had rendered no service. The instant case is readily distinguishable. The evidence clearly establishes the fact that W. F. Miller either received no salary or an inadequate salary during the prior years when petitioner was attempting to exploit his invention. Cf. General Smelting Co., 4 T.C. 313. Having found as *259 a fact that the amounts paid to W. F. Miller in the taxable years 1942 and 1943 constituted reasonable compensation paid for services rendered to petitioner in prior years, it follows that petitioner is entitled to deduct the same as ordinary and necessary expenses of its business, under section 23 (a) (1) (A) of the Internal Revenue Code as amended. Decision will be entered under Rule 50.