GEIGER & PETERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53746. Filed March 12, 1957.

*Lester M. Ponder, Esq.*, and *Raymond W. Gray, Jr., Esq.*, for the petitioner.

*Elmer E. Lyon, Esq.,* for the respondent.

BRUCE, *Judge:* The respondent determined deficiencies in the income taxes of petitioner for the years and in the amounts as follows:

| Year | Deficiency |
| --- | --- |
| 1948 | $16, 840.63 |
| 1949 | 18, 259. 90 |
| 1950 | 17, 737. 48 |

Two questions are presented: (1) Whether the amounts of interest and rent and a portion of the officers' compensation claimed by petitioner as deductions on its returns for 1948, 1949, and 1950 are prohibited as deductions by the provisions of section 24 (c), as amended, of the Internal Revenue Code of 1939; and (2), if not so prohibited, whether the portions of the officers' salaries which have been disallowed by respondent represent unreasonable and excessive salaries within the meaning of section 23 (a), Internal Revenue Code of 1939.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner is a corporation organized on July 12, 1929, under the laws of the State of Indiana, with its office and principal place of business at Indianapolis, Indiana. Petitioner's Federal income tax returns for the years in issue were prepared and filed on an accrual basis of accounting and on the basis of a fiscal year ending June 30. Petitioner filed its Federal income tax returns for the taxable years in issue with the collector of internal revenue for the district of Indiana.

Two brothers, Oscar and Harold Peters, and their mother, Lena Peters, each owned one-third of the petitioner's capital stock during the years in issue. During this period the officers and directors of the petitioner consisted of Harold I. Peters, president and treasurer; Oscar C. Peters, secretary; and Lena B. Peters, vice president, each of whom filed his or her individual Federal income tax returns for the years 1948, 1949, and 1950 on a calendar year basis and cash receipts and disbursements method of accounting.

Prior to and during the years in issue, petitioner was engaged in the business of fabrication and erection of structural and ornamental steel. Fabrication of steel is a process whereby lengths of raw steel obtained either from warehouses or from the steel mills are drilled and shaped preparatory to their use for construction purposes. To carry out the fabrication process the blueprints of the proposed construction must be examined, and from them detailed drawings of the fabricated steel requirements must be prepared showing the precise shapes necessary, as well as the points where drilling is required. Subsequently a "layout man" transfers the data from the drawings to

the raw steel itself and the metal shop of the petitioner shapes and drills the steel accordingly. Maximum tolerances allowed in this fabrication process do not exceed one-fourth inch.

The petitioner employs about 35 men. Its operation is divided into two main departments, the office force and the metal shop.

Harold I. Peters has been employed by the petitioner continuously since 1934. During the years in issue Harold was in charge of the office management of the petitioner. In this capacity he performed the following duties: Supervising the bookkeeping; estimating the costs of prospective fabricating jobs and submitting bids; buying the raw steel used by the petitioners; and hiring the engineers and office personnel. During the years in issue Harold spent 50 to 60 hours per week on company business.

Oscar C. Peters has been employed by the petitioner since 1929 and has worked almost exclusively in the metal shop. In the early 1930's Oscar became shop manager of the petitioner corporation and occupied that position during the taxable period in issue. In that capacity he supervised the entire fabrication process in the plant and was responsible for its production. When necessary Oscar hired and trained new personnel for jobs in the plant and as shop manager he was responsible for the steady flow of the fabricated steel to the erection site in the field. He also assisted Harold in the procurement of raw steel and other necessary material.

Oscar and Harold were the only active executives of the corporation during the years in issue.

During the year 1941 Harold, Oscar, and Lena loaned petitioner the amount of $18,900 and petitioner executed demand notes for that amount bearing interest at the rate of 5 per cent per annum. The amount of $10,500 remained unpaid during the entire period in issue. This amount was represented by demand notes payable in the following respective amounts:

| | |
|---|---:|
| Harold I. Peters | $4,000 |
| Oscar C. Peters | 4,000 |
| Lena B. Peters | 2,500 |

On its books of account petitioner debited an expense account, designated "Interest and Discount," under date of June 30, 1948, 1949, and 1950, in the amount of $525, and credited the "Personal" accounts of Harold and Oscar in the amount of $200 each and the "Personal" account of Lena in the amount of $125. These amounts were for interest on petitioner's demand notes payable to these individuals for each taxable year. Such amounts were included as gross income for the years 1948, 1949, and 1950 in the income tax returns of each individual and taxes were paid thereon. The respondent disallowed the entire amount of this claimed interest expense.

During the taxable years in issue petitioner occupied a building owned by Harold, Oscar, and Lena as tenants in common.

On its books of account petitioner accrued in an expense account designated "Rent" (for its use and occupancy of the business property leased from the Peters) the amount of $4,800 for the taxable year 1949 and $7,200 for each of the taxable years 1949 and 1950. Petitioner paid the real property taxes on such property in the respective amounts of $660.54, $730.57, and $798.06 for the taxable years 1948, 1949, and 1950, and credited such payments to an account on its books designated "Taxes." The net amount after subtracting such taxes from the total debit for rent was credited in equal amounts on the personal accounts of Harold, Oscar, and Lena for each of the taxable years as follows:

|        | 1948       | 1949       | 1950       |
|--------|------------|------------|------------|
| Harold | $1,379.82  | $2,156.48  | $2,133.98  |
| Oscar  | 1,379.82   | 2,156.48   | 2,133.98   |
| Lena   | 1,379.82   | 2,156.47   | 2,133.98   |

These net amounts were included in gross income as reported in each of the individual income tax returns for the years 1948, 1949, and 1950, and Federal income taxes were paid thereon. The respondent disallowed the entire deduction ($4,800 for 1948 and $7,200 for 1949 and 1950, respectively) claimed by petitioner for rental expenses of this property.

According to petitioner's books of account, Harold and Oscar received salaries composed of two separate items. One was a weekly cash salary payment and the other was an annual bonus. Harold and Oscar fixed the amount of their weekly cash salary payment after joint consultation.

The totals of weekly cash salaries paid Harold and Oscar are as follows:

|        | 1948     | 1949     | 1950     |
|--------|----------|----------|----------|
| Harold | $3,445   | $3,380   | $3,235   |
| Oscar  | 3,445    | 3,380    | 3,235    |

In June of each year, after studying the trial balances and considering the probable profits together with other factors including hours of work and extra effort, Harold and Oscar determined the amount of bonus for all employees for each year. Both the bonuses and weekly salaries were debited in an expense account of the corporation. The bonuses which were payable to Oscar and Harold were credited on the petitioner's books to their respective personal accounts. The weekly compensation was paid in cash and was not reflected in the personal accounts. During the years in issue the petitioner deducted the following amounts as bonuses for Harold and Oscar:

| Year | Total bonus | Federal old age benefit taxes withheld | Withholding tax | Net bonus |
|---|---|---|---|---|
| *Harold* | | | | |
| 1948 | $17,500 | $11.86 | $2,124.75 | $15,363.45 |
| 1949 | 18,000 | 13.10 | 2,690.30 | 15,296.00 |
| 1950 | 18,000 | 20.50 | 2,690.30 | 15,289.20 |
| *Oscar* | | | | |
| 1948 | $17,500 | $12.45 | $2,324.85 | $15,162.70 |
| 1949 | 18,000 | 13.00 | 2,694.10 | 15,292.80 |
| 1950 | 18,000 | 20.50 | 2,694.10 | 15,285.40 |

The amounts in the "Net bonus" column were credited to the personal ledger accounts of Harold and Oscar. The amounts of the total bonuses were subsequently included in the gross income of their respective Federal income tax returns for the respective years and income taxes were paid thereon. In the notice of deficiency the respondent disallowed claimed deductions for officers' bonuses in the following amounts:

| | |
|---|---|
| 1948 | $30,526.15 |
| 1949 | 30,589.40 |
| 1950 | 30,574.60 |

All of these aforementioned entries with respect to the deductions for interest, rent, and bonus, which were disallowed by the respondent, were entered on the books of the corporation in connection with its yearly audit. These audits during the years in issue were completed on the following dates:

| | |
|---|---|
| 1948 | July 30, 1948 |
| 1949 | Aug. 25, 1949 |
| 1950 | Aug. 21, 1950 |

None of the amounts credited to the personal accounts of Harold, Oscar, and Lena, which were subsequently disallowed as deductions by respondent, were actually paid by the petitioner within 2½ months after the close of the taxable year of petitioner for which such amounts were claimed as deductions.

The petitioner did not place any restrictions upon the withdrawals of Harold, Oscar, and Lena from their personal accounts.

The balances in the personal accounts of Harold, Oscar, and Lena on June 30 of each of the years in issue were as follows:

| | *1948* | *1949* | *1950* |
|---|---|---|---|
| Harold | $26,506.86 | $26,567.35 | $40,478.10 |
| Oscar | 26,830.91 | 26,617.38 | 41,542.78 |
| Lena | 5,622.41 | 6,402.73 | 10,502.41 |

The withdrawals from the personal accounts of Harold, Oscar, and Lena were as follows:

| | *1948* | *1949* | *1950* |
|---|---|---|---|
| Harold | $2,538.91 | $22,567.33 | $4,212.35 |
| Oscar | 2,729.95 | 19,364.65 | 3,194.52 |
| Lena | 313.50 | 302.99 | 659.34 |

The sales, gross profit, officers' salaries, net profits before and after taxes, and earned surplus of petitioner for the taxable periods from June 30, 1941, to June 30, 1950, according to its books of account, were as follows:

| Taxable period ended June 30 | Sales | Gross profit | Officers' salaries | Net profit before taxes [1] | Net profit after taxes [1] | Earned surplus balance [1] |
|---|---|---|---|---|---|---|
| 1941 | $123,301.55 | $29,415.75 | $7,932.50 | $2,929.59 | $2,494.55 | ($10,531.52) |
| 1942 | 193,352.36 | 41,927.94 | 14,204.88 | 5,344.17 | 4,215.01 | (5,703.20) |
| 1943 | 195,851.03 | 33,767.43 | 10,878.30 | 1,588.33 | 1,191.25 | (5,835.80) |
| 1944 | 81,960.44 | 24,416.37 | 7,408.30 | (979.57) | (979.57) | (7,222.45) |
| 1945 | 159,118.07 | 49,582.33 | 14,264.00 | 6,751.41 | 4,992.33 | (519.03) |
| 1946 | 297,822.47 | 72,519.52 | 21,810.00 | 16,538.61 | 11,422.73 | 14,308.40 |
| 1947 | 299,022.84 | 80,819.03 | 25,810.00 | 22,113.49 | 17,085.13 | 31,306.01 |
| 1948 | 396,330.07 | 110,313.35 | 42,195.00 | 20,901.51 | 16,176.13 | 47,179.16 |
| 1949 | 565,200.79 | 129,985.38 | 42,890.00 | 24,618.71 | 19,027.03 | 54,072.49 |
| 1950 | 385,521.58 | 129,439.06 | 42,760.00 | 28,900.75 | 21,118.35 | 77,318.56 |

[1] Parentheses denote red figures.

Petitioner's current assets and current liabilities according to its balance sheets of June 30, 1948, 1949, and 1950 were as follows:

| | Fiscal year ended June 30 | | |
|---|---|---|---|
| | 1948 | 1949 | 1950 |
| *Current assets* | | | |
| Cash and bank | $1,136.38 | $14,857.23 | $30,604.00 |
| Accounts receivable—trade | 69,929.42 | 97,369.64 | 89,230.66 |
| Inventory—material, supplies, and work in process | 68,620.35 | | |
| Inventory—raw materials | | 33,735.99 | 49,375.98 |
| Inventory—work in process | | 10,580.00 | 28,829.66 |
| Total current assets | $139,686.15 | $156,532.86 | $198,040.30 |
| *Current liabilities* | | | |
| Accounts payable—trade | $13,666.45 | $11,109.62 | $16,742.58 |
| Accounts payable—officers and employees | 68,606.82 | 71,580.61 | 101,449.40 |
| Notes payable—officers | 10,500.00 | 10,500.00 | 10,500.00 |
| Notes payable—others | 500.00 | | |
| Accrued accounts payable | 12,883.21 | 18,164.63 | 11,564.12 |
| Total current liabilities | $106,156.48 | $111,354.86 | $140,256.10 |

Petitioner's high and low bank balances in the period of July 1 to September 15 during each of the years in issue are as follows:

| Year | High | Low |
|---|---|---|
| 1948 | $37,551.84 | ($173.25) |
| 1949 | 54,287.20 | 16,173.95 |
| 1950 | 54,854.36 | 4,988.15 |

During the years in issue the petitioner had no established line of credit.

The petitioner has never paid a dividend.

In 1948 Harold borrowed $20,000 from the John Hancock Mutual Life Insurance Company to finance the cost of a new house which he had constructed.

The amounts deducted by petitioner during the years in issue as salaries for Harold and Oscar were not unreasonable.

OPINION.

## Issue 1.

The first issue to be decided in this case is whether the petitioner is barred by section 24 (c) of the Internal Revenue Code of 1939, as amended,[1] from deducting certain expenses and interest which it incurred and accrued on its books but which were not actually paid in cash within 2½ months after the close of each of the taxable years in issue.

The purpose of section 24 (c) is to eliminate the former tax avoidance practice of accruing unpaid expenses and interest payable to a closely related taxpayer who, because he is on the cash basis, reports no income. Because of the relationship between the taxpayers, payment might never be required or might be postponed until the related taxpayer has offsetting losses. *Platt Trailer Co.*, 23 T. C. 1065, 1068, citing House Ways and Means Committee Rept. No. 1546, 75th Cong., 1st Sess. (1937), p. 29. Prior to amendment by the Technical Changes Act of 1953, section 24 (c) operated, in the case of certain closely related taxpayers, such as a corporation and a shareholder owning more than 50 per cent of the corporation's stock, to disallow deduction of certain expenses and interest (1) if such expenses or interest was not paid within the taxable year or within 2½ months after the close thereof; and (2) if, under the recipient's method of accounting, the amount was not, unless paid, includible in his income in the taxable year in which, or with which, the taxable year of the payor corporation ended.

In general, section 24 (c) (1) had been interpreted as requiring actual payment (cash or negotiable paper having a determinable market value) of the expenses or interest not later than 2½ months after the close of the taxable year. This construction had resulted in the denial of deduction to taxpayers in some cases even though by application of the doctrine of constructive receipt the amount for

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued—

(1) If within the period consisting of the taxable year of the taxpayer and two and one-half months after the close thereof (A) such expenses or interest are not paid, and (B) the amount thereof is not includible in the gross income of the person to whom the payment is to be made : [*] and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends ; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

[*] Clause (B) added by Technical Changes Act of 1953.

which the deduction was claimed was required to be included in the gross income of the payee during the 2½ months after the close of the payor's taxable year. *P. G. Lake, Inc.*, 4 T. C. 1, affd. 145 F. 2d 898, certiorari denied 326 U. S. 732; *Ashe Electric Co.* v. *Commissioner*, 153 F. 2d 295, affirming a Memorandum Opinion of this Court; *Granberg Equipment, Inc.*, 11 T. C. 704; *L. R. McKee*, 18 T. C. 512, reversed and remanded 207 F. 2d 780, after amendment of section 24 (c) by the Technical Changes Act; *Glenwood Sanatorium*, 20 T. C. 1099.

As indicated in the reports of the House Committee on Ways and Means and the Senate Committee on Finance (H. Rept. No. 894, 83d Cong., 1st Sess., 1953–2 C. B. 508, 510; S. Rept. No. 685, 83d Cong., 1st Sess., 1953–2 C. B. 526, 528) in identical language,[2] section 202 of the Technical Changes Act, amending section 24 (c) (1) of the 1939 Code, was enacted for the purpose of eliminating this unintended hardship and to prevent the disallowance of a deduction for expenses or interest if the amount thereof is includible in the gross income of the payee within the taxable year of the payor or within the 2½ months following the close of such taxable year.

Petitioner has complied with the necessary requirements for retroactive application set out in paragraph (b) (2) of section 202 of the Technical Changes Act of 1953, and section 24 (c) (1) of the 1939 Code, as amended, is applicable to the taxable years here involved.

For a deduction to be barred by section 24 (c) all of the conditions set forth therein must coexist. *Platt Trailer Co.*, *supra; Fincher Motors, Inc.*, 43 B. T. A. 673. The amendment added by the Technical Changes Act of 1953 did not alter this requirement. Ac-

---

[2] [H. Rept. No. 894, 83d Cong., 1st Sess. ; S. Rept. No. 685, 83d Cong., 1st Sess.]

*Section 202. Deduction of certain unpaid expenses and interest.*

In the case of certain closely related taxpayers, such as a corporation and a shareholder owning more than 50 percent of the corporation's stock, section 24 (c) of the Code operates to disallow deduction of certain expenses and interest if the following conditions are met :

(1) The amount is not paid within the taxable year or within 2½ months after the close thereof ; and

(2) Under the recipient's method of accounting the amount is not, unless paid, includible in his income in the taxable year in which, or with which, the taxable year of the payor corporation ends.

This provision is intended to insure that transactions between such related taxpayers do not operate to shift items of income or deductions. A situation has been called to the attention of your committee, however, where section 24 (c) may work an undue hardship. For example, a recipient on the cash basis may have an amount credited to his account and made available to him by the corporate payor within 2½ months after the close of the payor's taxable year so that the recipient must include it in income as an item constructively received in the taxable year so credited. If, however, the corporate taxpayer fails actually to pay over such amount within the period of 2½ months, the item will not be allowed to the corporation as a deduction. Your committee believes that such a case should not fall within the ban of section 24 (c) and the bill so provides by an appropriate amendment of requirement (1) above.

The amendment is applicable to taxable years of the payor beginning after December 31, 1950, but under certain conditions, set forth to insure that payments will be properly accounted for taxwise with respect to both parties, the payor may elect to make this amendment applicable to taxable years beginning after December 31, 1945, and before January 1, 1951.

cordingly, to sustain its position herein, petitioner need only establish that one or more of the conditions are not present.

The petitioner and the persons to whom the payments were to be made were persons between whom losses would be disallowed under section 24 (b) and petitioner concedes that the condition set forth in section 24 (c) (3) exists. Petitioner contends, however, that the conditions set forth in paragraphs (1) and (2) of section 24 (c), as amended, do not exist.

The first issue herein thus resolves itself into the narrow question whether the amounts involved were includible in the gross income of Harold, Oscar, or Lena, under the doctrine of constructive receipt.

Preliminarily, the real property taxes in the amounts of $660.54, $730.57, and $798.06 paid by petitioner and deducted from the rent owed by it to Harold, Oscar, and Lena for the years 1948, 1949, and 1950, respectively, clearly come within the conditions of section 24 (c) (1) and respondent erred, in any event, in disallowing the deductions claimed by petitioner for rental expenses to the extent they were so paid. Cf. *Glenwood Sanatorium, supra.* In this connection it is noted respondent did not disallow that portion of the bonuses credited to Harold and Oscar for the years 1948, 1949, and 1950, represented by the withholdings for "Federal Old Age" and "withholding" taxes. None of the other amounts, however, was actually paid to or for the benefit of Harold, Oscar, or Lena, the persons to whom such amounts were to be paid, within the taxable year of petitioner and 2½ months after the close thereof.

If the income in question is credited to the account of or set apart for the taxpayer so that it may be drawn upon by him at any time without any substantial limitation or restriction, the doctrine of constructive receipt applies. Regs. 111, sec. 29.44–2; *Platt Trailer Co., supra; Hoyt B. Wooten,* 12 T. C. 659, affd. 181 F. 2d 502. Thus, where a corporation did not have the cash available to pay the amounts of salary expense so credited on its books, but could have borrowed an amount that would enable it to do so, the doctrine of constructive receipt was applicable and the payor was accordingly entitled to a deduction. *Platt Trailer Co., supra; Ohio Battery & Ignition Co.,* 5 T. C. 283. In the instant case the uncontroverted evidence offered by the chairman of the bank's loan committee is convincing that during the 2½ months period after the close of the years in issue the petitioner would have been able to borrow from the Indiana National Bank of Indianapolis sufficient funds to pay the entire amounts credited on the personal accounts.

Respondent contends further that there was a tacit or implied agreement between Harold and Oscar that they would not withdraw the funds from the personal accounts and that such agreement caused the

doctrine of constructive receipt to be inapplicable. Whether such agreement did exist must be determined from all of the evidence. We have found as a fact that there were no restrictions placed by the petitioner upon the withdrawal by Harold, Oscar, and Lena. Moreover, all of the officers reported the payments in question as income on their individual income tax returns for each of the years and payment was credited on the books of the petitioner. The fact that the officers to whom such payments were to be made included them in their individual income tax returns and paid the tax thereon is not, as petitioner urges, conclusive on the question of deductibility under section 24 (c). *Anthony P. Miller, Inc.*, 7 T. C. 729, reversed in part on other grounds 164 F. 2d 268, certiorari denied 333 U. S. 861. Such treatment is entitled to consideration, however, as indicating that such officers considered the amounts credited to them as subject to their unconditional and unqualified demand. *Platt Trailer Co.*, *supra.* Thus, in their opinion, such payments were subject to their unfettered control and accordingly no tacit or implied agreement not to withdraw the funds existed.

We hold that the entire amounts of the salary and interest disputed in this proceeding were constructively received by the payees (Harold, Oscar, and Lena) within $2\frac{1}{2}$ months after the close of the taxable year for which such amounts were claimed as deductions by petitioner. We hold further, that of the rental expense, the portion which was not actually paid out by petitioner for real property taxes was likewise includible in the gross income of the payees within $2\frac{1}{2}$ months after the close of the taxable years for which such rental deductions were claimed. Therefore, section 24 (c) does not bar the deduction of any of the disputed expenses or interest.

### Issue 2.

The second issue presented is whether the amounts of salary paid or credited to the accounts of Harold and Oscar, respectively, were "reasonable" within the meaning of section 23 (a) (1) (A), Internal Revenue Code of 1939.[3] The burden of proving reasonableness is upon petitioner. *Botany Worsted Mills* v. *United States*, 278 U. S. 282.

It is well settled that the question of what constitutes reasonable compensation to a specific officer of a corporation is essentially a question of fact to be determined by the peculiar facts and circum-

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *

stances of each particular case. *Miller Mfg. Co.* v. *Commissioner*, 149 F. 2d 421. Among the factors which are to be considered, but not necessarily with equal importance, are the type and extent of services rendered by the employee; the scarcity of qualified employees for the particular position; the volume and amount of the taxpayer's business, including its special or peculiar characteristics, if any; the prevailing compensation paid to employees performing similar services in other comparable enterprises; and the general economic conditions. *Mayson Manufacturing Co.* v. *Commissioner*, 178 F. 2d 115. See 4 Mertens, Law of Federal Income Taxation sec. 25.69.

Taking all of these factors into consideration, we have found as an ultimate fact that the amounts petitioner deducted as salary expense were not unreasonable. Harold and Oscar were the petitioner's only officers during the years in issue. They did not have any outside business interests. Testimony of officers of petitioner's competitors and other companies in the structural steel business indicates that both Harold and Oscar, as the petitioner's only executives, had greater duties and responsibilities than other executives in the structural steel business. These witnesses all indicated that under these conditions the compensation paid to Harold and Oscar was reasonable, and the vice president of a fabricating company which was a competitor of the petitioner testified that under the circumstances such amount of compensation was comparable to the amount paid the executives of his employer. The evidence indicates also that the method of compensating officers adopted by the petitioner in the instant case (low fixed salary with year-end bonus) is used by other corporations in the industry.

*Decision will be entered for the petitioner.*