Seven Canal Place Corporation v. Commissioner.
Seven Canal Place Corp. v. Commissioner
Docket No. 1162-62.
United States Tax Court
T.C. Memo 1964-270; 1964 Tax Ct. Memo LEXIS 69; 23 T.C.M. (CCH) 1643; T.C.M. (RIA) 64270; October 15, 1964
*69 Held, reasonable compensation for the year 1956 for petitioner's officers, determined. Robert P. Beshar, for the petitioner. Warren Shine, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined a deficiency in the income tax of the petitioner corporation for its taxable calendar year 1956 in the amount of $2,758.26. The sole issue for decision is the amount of the deduction for reasonable compensation to its officers, to which it is entitled for said year. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits identified therein are incorporated herein by reference. *70 The petitioner, Seven Canal Place Corporation, was organized in 1941 under the laws of the State of New York. It filed its Federal income tax return for the calendar year 1956 with the district director of internal revenue, Upper Manhattan District, in New York City. Petitioner's issued and outstanding capital stock at all times here material consisted of 80 shares of common stock, 69 shares of which were held by its president and treasurer, Herbert K. Beshar, and 11 shares by Herbert's brother, Edward H. Beshar, the vice president of petitioner. Petitioner's secretary was Ella A. Beshar, the wife of Herbert. These three officers had held the same offices for several years prior to 1956; and they were petitioner's only employees during 1956. During the taxable year here involved, Herbert was also the president and majority shareholder of a related corporation, A. Beshar & Co. Inc. (hereinafter called the "Beshar Company"), which was engaged in a business of cleaning, repairing, and selling at retail, oriental rugs and other carpeting. Beshar, Inc. was in turn the parent and sole stockholder of a subsidiary corporation, Carpet Servicing Co. Inc. (hereinafter called the "Carpet *71 Company"), which engaged in a wholesale business of cleaning and repairing rugs and carpets for large department stores, banks, office buildings, and the like. The three Beshar corporations (Beshar, Inc., Carpet Company, and the petitioner) shared common executive offices in a building in mid-town Manhattan, where Beshar, Inc. carried on its retail sales operations. During the taxable year involved, petitioner's business was that of a real estate holding company; and it owned two parcels of improved real property in an industrial district of the Bronx, one at 5 Canal Place and the other at 2564-6 Park Avenue. The Canal Place property was improved with a 5-story brick commercial building, which petitioner had acquired in 1941. The Canal Place building contained approximately 45,000 square feet of floor space and it was equipped with a large freight elevator capable of handling a fully loaded 2 1/2 ton delivery truck. Ever since its acquisition by petitioner in 1941, the Canal Place building has been fully occupied by the other Beshar corporations, Beshar, Inc., and the Carpet Company. During 1956, the rent charged to Beshar, Inc. was $6,900; while that carged to the Carpet Company *72 was $12,000. These amounts were reported as income by petitioner on its return for the taxable year involved; although the rents were not actually paid over to it, but were instead credited to petitioner in inter-company accounts on the tenants' books and picked up as receivables in an inter-company account on the petitioner's books. Rentals in the same amounts had been charged for each year since 1952. In addition to carrying on their respective rug-cleaning operations in the Canal Place building, Beshar, Inc. and the Carpet Company also stored large quantities of rugs, as well as art objects, which belonged to their customers; and Beshar, Inc. also stored there a large portion of its inventories of rugs. Insurance underwriters were unwilling to insure the contents of the building at their full value. At the rear of the Canal Place building stood the Park Avenue building, the two being separated only by a heating plant which serves both buildings. The Park Avenue building was likewise acquired by petitioner in 1941, at the same time as the Canal Place building. The Park Avenue building is a 3-story, concrete commercial structure, containing 23,000 square feet of floor space. Petitioner *73 has at all times leased this building to tenants unrelated to it. During 1956, the tenant was L. A. Sales Company, a corporation engaged in the distribution of high-priced miniature trains, planes, and the like. Petitioner reported taxable income of $9,415.86 for the year 1956 and paid Federal income tax thereon of $2,824.76. In addition to its expenses for Federal taxes and the disputed salaries paid its officers, petitioner incurred other expenses during 1956 totaling $17,084.16 for: Repairs and capital improvements to its buildings; various state and local property, franchise and unemployment taxes; social security; accounting and legal fees; real estate commissions; insurance; fuel and other supplies; interest and electric protection service (burglar alarm). Included in the total expenses so incurred was depreciation in the amount of $1,894.37. Petitioner has never paid any dividends. Its earned surplus on December 31, 1956, was $89,501.56. Herbert, Edward and Ella received salaries from Beshar, Inc. and Carpet Company, in addition to their salaries from petitioner, in the following amounts: Car-
Beshar, Inc.
pet company
Herbert
$25,200
$7,000
Edward
3,465
5,100
Ella
3,150
1,700
*74 Herbert performed a considerable amount of work on behalf of petitioner during the year 1956. Because of the valuable rugs and art objects stored in the Canal Place building, which (as above found as a fact) were not able to be completely covered by insurance, it was necessary for Herbert to keep a careful surveillance over the Canal Place building, as well as the Park Avenue building, to detect and eliminate potential hazards. He inspected both buildings at least twice each week. He supervised the making of repairs and capital improvements to the buildings; investigated claims for damages to goods of L. A. Sales Company because of defects in the Park Avenue buildings; conferred with petitioner's accountant regarding the salaries, taxes and tax returns of petitioner; discussed with an insurance broker the insurance deemed necessary for the buildings; and investigated attempted burglaries at the buildings. During the year petitioner eliminated watchman service at the buildings and Herbert supervised the installation of an electrical burglar alarm system known as Holmes Protection Service. The lease under which L. A. Sales Company occupied the Park Avenue building was for a term *75 expiring in February 1957. The lease contained an option on the part of L. A. Sales Company to renew. Because of the indicated possibility that L. A. Sales Company might not exercise its option to renew the lease, Herbert spent a large amount of time during 1956 consulting with real estate brokers regarding prospective tenants, interviewing prospective tenants and inspecting their business operations. Negotiations with L. A. Sales Company were conducted periodically throughout the year until late December 1956 when L. A. Sales Company exercised its option and renewed its lease for an additional 3 years at an increased rental. As noted above petitioner had a large earned surplus during the year 1956. Part of this surplus had been accumulated with a view toward the petitioner corporation's acquiring additional real property. To this end, Herbert and Ella considered numerous parcels of real property in the New York City area and elsewhere as investment for petitioner. Many of the properties were personally inspected by them, although none proved satisfactory to them as an investment for petitioner. Ella assisted Herbert in conducting the affairs of petitioner by reviewing credit ratings *76 for prospective tenants of the Park Avenue property, by reviewing legal documents, by searching for and inspecting prospective new investments, by preparing advertising and by consulting with Herbert regarding the rental negotiations with L. A. Sales Company and other matters. The only evidence of work performed by Edward for petitioner during 1956 is that during the rental negotiations with L. A. Sales Company, he screened and interviewed prospective tenants, referring those deemed desirable to Herbert. Edward severed his association with petitioner in 1957. During the years 1947 through 1956 petitioner paid salaries to its three officers as follows: Gross
Total
Her-
income of
Year
salaries
bert
Edward
Ella
petitioner
1947
$ 9,200
$5,000
$2,400
$1,800
$30,252
1948
10,200
5,500
2,700
2,000
32,168
1949
10,200
5,500
2,700
2,000
37,281
1950
12,000
6,600
3,000
2,400
40,351
1951
12,000
6,600
3,000
2,400
37,866
1952
12,000
6,600
3,000
2,400
30,615
1953
12,000
6,600
3,000
2,400
20,849
1954
12,000
6,600
3,000
2,400
24,412
1955
9,400
5,200
2,400
1,800
28,816
1956
9,400
5,200
2,400
1,800
35,900
*77 The salaries so paid and claimed as deductions on petitioner's income tax returns for the years 1951, 1952 and 1953 were challenged as excessive by respondent. After negotiations, the parties agreed to the allowance of total salaries of $9,400 for those three years. In a separate audit, the salaries paid and claimed as a deduction for the year 1954 were challenged and the parties likewise agreed to the allowance of total salaries of $9,400 in that year. Petitioner then deducted $9,400 in salaries on its returns for the years 1955 and 1956. Respondent, in his notice of deficiency, partially disallowed the deduction for officers' salaries claimed by petitioner in its 1956 return; and he explained his action as follows: [The] deduction of $9,400.00 claimed for officers' compensation for the calendar year 1956 was excessive and unreasonable to the extent of $7,900.00 and therefore to such extent is not deductible under the provisions of Section 162 of the Internal Revenue Code of 1954. Ultimate Finding of Fact The full amount of compensation paid by petitioner to both Herbert and to Ella during the year 1956 was reasonable in amount. A reasonable allowance *78 for compensation for the services performed by Edward is $600 for the year 1956. Opinion Section 162(a)(1) of the 1954 Code grants a taxpayer a deduction for all the ordinary and necessary business expenses paid or incurred, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." The issue in the instant case requires us to fix the "reasonable allowance," or reasonable compensation, for Herbert, for Ella, and for Edward Beshar, the officers and only employees of the petitioner corporation, for the year 1956. Respondent has determined, and here argues, that $1,500 is the aggregate amount of the reasonable allowance for all three - he does not say how this should be allocated among the three officer-employees. Petitioner deducted, and here argues, that the reasonable allowances are: $5,200 for Herbert, $2,400 for Edward, and $1,800 for Ella - or an aggregate of $9,400. What constitutes reasonable compensation is a question of fact to be decided under the circumstances of each individual case. Geiger & Peters, Inc., 27 T.C. 911. We have given careful consideration to the testimony and all the other evidence in *79 this case, and we have come to the firm conclusion that the respondent's $1,500 figure is much too low, and should not be permitted to stand. With regard to Herbert (petitioner's president-treasurer), the evidence establishes that in addition to routine administrative work performed for petitioner, he also conducted negotiations for renewal of the lease by L. A. Sales Company, the unrelated tenant who occupied the Park Avenue building; interviewed numerous prospective tenants for the Park Avenue building; inspected several properties as possible investments for petitioner (whose business was that of a real estate holding company); and supervised the installation of a new burglar alarm system, as well as the making of various repairs and capital improvements to petitioner's properties. For these services, petitioner paid Herbert $5,200 per year (or slightly over $430 per month). In the light of the foregoing, and other services performed by Herbert, we have found as an ultimate fact that the amount which petitioner paid him was reasonable. We hold that petitioner properly deducted the amount so paid to Herbert. Insofar as Ella (petitioner's secretary) is concerned, the evidence *80 establishes that she served primarily as a valuable assistant to Herbert. She handled much of the administrative work of petitioner such as reviewing tax returns, leases, and carrying on correspondence. She also obtained and reviewed credit reports on prospective tenants of the Park Avenue building. In addition she accompanied Herbert on inspections of various pieces of real property as possible investments for petitioner. Petitioner paid Ella only $1,800 per year (or $150 per month). We have found as an ultimate fact that that amount was reasonable; and we hold that petitioner was entitled to a deduction therefor. Turning finally to Edward (petitioner's vice president), his services, viewed in the light of the evidence before us, were minimal. Petitioner paid him $2,400 per year. That amount was excessive. Doing the best we can with the scant evidence before us, we have found as an ultimate fact and here hold, that $600 was reasonable compensation for Edward for 1956. We recognize, of course, that petitioner and respondent, in working out a settlement of petitioner's tax liabilities for 1951, 1952, and 1953, agreed petitioner was entitled to an aggregate deduction of $9,400 per *81 year for salaries for its officers in those years; and that this same amount was likewise utilized in settling petitioner's 1954 Federal income tax liabilities. We do not know how the $9,400 figure was arrived at, or what trading with respect to other issues may have gone into fixing it, or whether Edward may have been more active in those earlier years. In any event, that settlement figure concerning services for prior years is not controlling on the deductible compensation for the later year, 1956, which is here involved. Petitioner here is entitled to a deduction for the salary of each officer in 1956, in accordance with the proof it has made in the case here before us. We have endeavored to decide this case in accordance with that principle. Decision will be entered under Rule 50.