Ettle Company, Inc. v. Commissioner.
Ettle Co. v. Commissioner
Docket No 1292-70 SC.
United States Tax Court
T.C. Memo 1971-86; 1971 Tax Ct. Memo LEXIS 249; 30 T.C.M. (CCH) 351; T.C.M. (RIA) 71086; April 26, 1971, Filed *249 Held: On the basis of the facts submitted, the salary paid to petitioner's president during the years in question was unreasonable and excessive to the extent it exceeded $4,800, as allowed by respondent. E. C. Barlar (an officer), for the petitioner. John B. Harper, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the petitioner's income tax in the amounts and for the taxable years as follows: Year Ending
Deficiency
Nov. 30, 1966
$329.48
Nov. 30, 1967
265.78
Nov. 30, 1968
400.47
The issue involved in this case is whether payments in the amounts of $6,450, $6,600, and *250 $7,700 made to petitioner's president in the taxable years ended November 30, 1966, November 30, 1967, and November 30, 1968, respectively, represent reasonable compensation for services performed by that officer. Findings of Fact Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference. Petitioner is a corporation incorporated under the laws of the State of Tennessee on December 2, 1963. For the fiscal years ended November 30, 1966, November 30, 1967, and November 30, 1968, petitioner filed Federal corporate income tax returns on Form 1120 with the district director, Nashville, Tennessee. Petitioner is in the trade or business of acquiring and renting real property. The capital stock of petitioner during the years in question consisted of 156 shares of $100 par common stock. During these years, 80 of the shares were owned by E. C. Barlar (Barlar), president of the petitioner, and 76 shares were owned by Donna Barlar, his wife, who was also petitioner's secretary. Petitioner's board of directors was composed of its president, its secretary, and an attorney, John Pritchett. *251 Petitioner's office is located in the home of its president. All of the property owned and rented out by the corporation was located in Nashville. The summary below reflects the rental property owned by the corporation and its cost during the years under consideration: 352 Property
Acquired
RentalUnits
Cost
Block Apartment Building
12- 4-63
11
$28,500
415 Humphrey Street
Stucco Building
1- 4-65
4
6,305
2030 - 14th Avenue, North
2 Frame Buildings
5-14-65
2
5,199
409 1/2 and 411 Humphrey Street
Frame Building
3-15-65
2
3,242
419 Humphrey Street
Frame Building
10- 2-66
2
3,200
2137 - 14th Avenue, North
Total (real property)
21
$46,446
Total (furniture and fixtures - 1968) 4,194
Total (all rental property) $50,640 All but one of the properties were acquired prior to the years in controversy. All of the Humphrey Street property is located in the same block, which is six miles from petitioner's office. The buildings on Fourteenth Avenue are two block apart and are ten miles from petitioner's office. Petitioner has only two regular employees, its president and secretary. During the taxable years ended *252 November 30, 1966, 1967, and 1968, petitioner paid its president compensation in the amount of $6,450, $6,600, and $7,700, respectively. The first year in which the secretary received compensation for her services as bookkeeper was the taxable year ended November 30, 1968, when she was paid $2,140, which included amounts to compensate her for services rendered in prior years. Barlar's taxable years were calendar years. Converting the payments made by petitioner for compensation to Barlar in its fiscal years to calendar years, the salaries received by the president in the calendar years 1964 through 1968 were as follows: Calendar Year
Salary
1964
$4,800
1965
4,800
1966
6,600
1967
6,600
1968
7,800
Petitioner's president handled all of the day-to-day management of petitioner's affairs. The principal duties performed by the president during the years in question were collecting the rents every Saturday morning and maintaining the property. Collection of rents took approximately three hours each week. The president made some of the minor repairs on the property himself. However, he contracted with electricians, carpenters, painters and plumbers for any major *253 work that needed to be done. These major repairs were usually done at the time the property was purchased. In addition to these duties, the president advertised the property for rent in the newspapers, interviewed prospective tenants and signed leases or contracts with new tenants. He also obtained insurance for the properties and handled all complaints from the tenants. The primary responsibility of petitioner's secretary was to keep the books and records. She also made deposits of the rents in the bank, kept the minutes of such meetings of the board of directors as may have been held, and filed petitioner's income tax returns. In addition, the secretary assisted the president in the management of the corporation. During the years in question, petitioner's president was employed on a full-time (40 hour week) basis as a clerk with the Internal Revenue Service, United States Treasury Department, in Nashville. By virtue of his employment with the United States Government, Barlar participated in the U.S. Civil Service Retirement System. As a consequence thereof, his wages were not subject to withholding for old age and survivor's insurance (hereinafter referred to as "Social Security") *254 contributions. However, as an employee of petitioner, Barlar was covered by social security. During this time petitioner's secretary was also employed on a full-time basis by other employers as an accountant or bookkeeper. Social Security contributions were withheld from her salary by her employers. From its incorporation until the close of the taxable year ended November 30, 1968, petitioner's rental receipts were as follows: 353 T/Y Ended
Receipts
11-30-64
$ 8,198.25
11-30-65
11,173.92
11-30-66
13,420.00
11-30-67
15,033.27
11-30-68
16,997.10 The net profits of petitioner prior to the payment of salaries to its officers, were as follows: Net Profits Prior
T/Y Ended
to Salaries
11-30-64
$1,828.12
11-30-65
4,593.92
11-30-66
6,297.66
11-30-67
6,008.11
11-30-68
8,607.69 The earnings per the books and records of petitioner were as follows: Balance at Beginning
Balance at End
Year Ended
of Year
Net Income
of Year
11-30-64
-0-
($2,571.88)
($2,571.88)
11-30-65
($2,571.88)
( 206.46)
( 2,778.34)
11-30-66
( 2,778.34)
( 152.34)
( 2,930.68)
11-30-67
( 2,930.68)
( 591.89)
( 3,522.57)
11-30-68
( 3,522.57)
( 1,232.31)
(4,754.88)
*255 Petitioner paid no dividends during this period. On petitioner's corporate income tax returns for the years ended November 30, 1966, 1967, and 1968, the respective amounts of $6,450, $6,600, and $7,700 were claimed as deductions for compensation to petitioner's president. In the statutory notice of deficiency, respondent disallowed the deductions to the extent that they exceeded $4,800, stating that "It is determined that the amounts deducted exceed a reasonable allowance for compensation for personal services actually rendered by Mr. Barlar." Opinion The issue involved concerns the reasonableness of the compensation paid to petitioner's president and claimed as deductions under section 162(a)(1) of the Internal Revenue Code of 1954. [1] The cited statute allows deductions for business expenses "including * * * a reasonable allowance for salaries or other compensation for personal services actually rendered." What constitutes reasonable salary or compensation is a question of fact. Respondent's determination is presumptively correct and petitioner has the burden of proving that it is entitled to a deduction in an amount larger than the amount allowed by respondent. *256 Geiger & Peters, Inc., 27 T.C. 911 (1957). Several factors are pertinent in considering whether payments made to employees are reasonable and are paid solely for services rendered. As stated in Mayson Manufacturing Company v. Commissioner, 178 F. 2d 115 (C.A. 6, 1949): Although every case of this kind must stand upon its own facts and circumstances, it is well settled that several basic factors should be considered by the Court in reaching its decision in any particular case. Such factors include the employee's qualifications; the nature, extent, and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular *257 employee in previous years. * * * The situation must be considered as a whole with no single factor decisive. Barlar and his wife testified that, in addition to his regular employment, he spent approximately 50 hours a week on petitioner's business. No evidence was introduced to show either the nature of or the time spent in making minor repairs. Other than his own testimony that he spent three hours each Saturday morning collecting rent, there is no evidence to show the time spent on his other duties. We are not convinced by the testimony of Barlar and his wife that he spent 50 hours a week on the business of the corporation. Assuming Barlar spent a considerable amount of time on petitioner's business, there has been no showing that his responsibilities increased during the years in question over what they were in prior years, thereby justifying the increased salary. Moreover, petitioner has introduced no evidence to show that the compensation paid its president was comparable to the salary paid by similar enterprises for services similar to those rendered by Barlar. The testimony reveals that a 354 rental agent would have charged a fee of 10 percent of rental receipts to manage *258 the property and perform duties similar to those performed by Barlar, such as advertising apartments for rent, interviewing prospective tenants, negotiating leases and collecting rent. In petitioner's case this fee would have ranged from $1,342 to $1,699 for the years in question, which is far less than the salary it paid to Barlar during the same period. In addition to the fact that petitioner has failed to establish any reasonable basis for the increase in salary for the years in question, it is to be noted that these salary increases coincided with the increases in the maximum amount of remuneration which would be treated as wages for purposes of determining contributions to social security. [2] This lends support to respondent's argument that the increases in salary paid during the years in question were intended by petitioner to obtain greater social security benefits for its president rather than to compensate him for any increased services or responsibilities. Accordingly, we hold that the salary paid to petitioner's president during the years in question was unreasonable and excessive to the extent it exceeded $4,800, *259 as allowed by respondent. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. 42 U.S.C. § 409(a)3, 4 & 5↩.