*Decision will be entered under Rule 155.*

ROBERT B. WHITE AND DOROTHY D. WHITE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6165–70. Filed March 18, 1974.

*Harry Friedman*, for the petitioners.
*Rufus H. Leonard, Jr.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax of $10,750.36 and $14,242.09 for the calendar years 1966 and 1967, respectively. One of the issues raised by the pleading has been disposed of by agreement of the parties. The only remaining issue is whether petitioners' income from a subchapter S corporation of which Robert B. White was the sole stockholder should be increased in each of the years here in issue by an increased corporate income resulting from disallowance of a claimed corporate deduction of "Officer's Salary" accrued in each of the years 1966 and 1967 on the books of the corporation, but in each instance not actually paid to the corporation's sole officer-stockholder during the year or within 2½ months following the close of the corporation's taxable year.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Robert B. and Dorothy D. White, husband and wife, who resided at Scarsdale, N.Y., at the time of the filing of the petition in this case, filed joint Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue in Manhattan, New York.

Petitioner is and has been since its incorporation in New York in 1949 the sole stockholder of Gardner's Village, Inc. (hereinafter corporation). The corporation's principal business activity is the sale at retail of gardening and pet supplies. In January 1963, the corporation filed a proper election to qualify as a subchapter S corporation. At the time of this election, the corporation had earned surplus which it reported on its Form 1120–S income tax returns as "Retained Earnings—Unappropriated." The closing balances in this account as of December 31, 1966, and December 31, 1967, were $69,943.43 and $67,368.25, respectively. The corporation has consistently since 1964 filed U.S. Small Business Corporation Income Tax Returns, Form 1120–S.

The corporation has at all times kept its records on an accrual method of accounting and used the calendar year. Petitioner has kept his records at all times on the cash receipts and disbursements method of accounting and filed his income tax returns for the calendar year.

In 1964 the corporation adopted a policy with respect to compensation to be paid to its president, who is also its sole stockholder, whereby he was paid a weekly salary of $400 with the accrual at the end of each taxable year of a bonus of $20,800. Payment of the bonus was to be made or deferred at the sole option of petitioner for whatever reason he decided. For the taxable year 1964, and each succeeding taxable year, the corporation's accountants made closing entries to the books of the corporation, debiting "Salaries" for the $20,800 bonus and crediting that amount to an account payable to petitioner. This closing entry was actually entered on the books in January of the following year, but the additional charge to "Salaries" of each year's bonus was used to reduce the taxable income of the corporation reported on its Form 1120–S for the year for which it was accrued. Petitioner, as sole stockholder of the subchapter S corporation, included the corporation's taxable income as reported on its Form 1120–S on Schedule B of his Federal income tax return for the same calendar year as small business corporation income for that year.

The compensation awarded to petitioner from the corporation for each of the calendar years 1966 and 1967 and deducted in that year by the corporation in computing the corporate income was as follows:

|  | 1966 | 1967 |
|---|---|---|
| Weekly salary | $21,200 | $20,800 |
| Bonus accrued | 20,800 | 20,800 |
| Total | 42,000 | 41,600 |

The bonus accrued in 1966 was transferred on the corporate books to an account payable in January 1967 but was actually paid to petitioner in September 1967. The bonus accrued in 1967 was transferred to an account payable on the corporate books in January 1968 but was actually paid to petitioner on May 21, 1968. Petitioner reported the bonuses in his income in the year he actually received payment, which in each instance was the taxable year subsequent to the year for which the concomitant salary deduction was taken by the corporation.

The bonus deducted by the corporation for the taxable year 1965 was actually paid to petitioner within 2½ months after the close of the corporation's taxable year 1965 and respondent did not contest the salary deduction claimed by the corporation for the bonus payment for the year 1965.

The corporation on its returns for the taxable years 1966 and 1967 deducted no interest expense, claimed no depreciation on buildings owned, but deducted rental expenses paid in the respective amounts of $53,244.61 and $51,514.97. The corporation had cash on hand in the following amounts on the following dates:

| Dec. 31, 1965 | $106,879.70 | Mar. 31, 1966 | [1] $26,501.00 |
|---|---|---|---|
| Dec. 31, 1966 | 61,854.31 | Mar. 31, 1967 | 21,999.00 |
| Dec. 31, 1967 | 60,956.16 | Mar. 31, 1968 | 20,996.00 |

[1] After payment of 1965 bonus to petitioner of $20,800.

The cash balance as of March 31 of each of these years was the lowest cash on hand of the corporation at any time during the year.

Petitioner, as sole officer of the corporation, had full control of the business operations during the years in issue. Petitioner was authorized to sign checks on behalf of the corporation and had the power to authorize payment of the bonuses. Petitioner had unrestricted power to withdraw the bonuses payable to him at any time after the closing of the corporate books in January of each year.

In addition to cash on hand, the corporation showed on its balance sheets at December 31, 1966, and December 31, 1967, "Other investments" of $24,463.98 and $22,581.39, respectively. The corporation during each of the years here in issue could have borrowed at least $100,000 had petitioner deemed such borrowing to be advisable.

Respondent in his notice of deficiency to petitioner for the years 1966 and 1967 increased the small business corporation income includ-

able in petitioner's income each year by $20,800. Respondent gave the following explanation of the increase in the corporate income:

Since the amounts accrued on the books of Gardner's Village, Inc. as additional salary for Robert B. White in the amounts of $20,800.00 for each of the years 1966 and 1967 were not paid within two and one-half months after the close of each taxable year and were not included in his gross income in the year accrued, it is determined that the deductions are not allowable under the provisions of section 267 of the Internal Revenue Code.

## OPINION

Respondent's position is that the deductions for accrued bonus salaries in 1966 and 1967 must be disallowed under the provisions of section 267(a)(2).[1] This section provides that expenses otherwise deductible by a taxpayer which are not paid within the taxable year of the taxpayer and the period of 2½ months thereafter are not deductible if the payor and payee are persons with the specified relationship and the amount is not includable in the payee's income and if the payee's method of accounting is such that the amount is not includable in his income unless paid.

In the instant case it is clear that petitioner and the corporation are related within the meaning of section 267(b)(2). It is likewise clear that while the corporation uses an accrual method of accounting, petitioner uses the cash method so that amounts are not includable in his income until paid or constructively received. (Sec. 267(a)(2)(A) and (B).) The issue here is solely whether the bonuses accrued on the books of the corporation were constructively received by petitioner in the years 1966 and 1967 or within 2½ months after the close of those years so that the amount of the bonuses is "includible" in the gross income of petitioner within 2½ months after the close of each of the corporation's taxable years.

Although the doctrine of constructive receipt is not defined by any Code section, it is explained in section 1.451–2(a), Income Tax Regs.,

---

[1] All statutory references are to the Internal Revenue Code of 1954.

SEC. 267(a). DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

\*          \*          \*          \*          \*          \*          \*

(2) UNPAID EXPENSES AND INTEREST.—In respect of expenses, otherwise deductible under section 162 or 212, \* \* \*

(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

which states in part that income is constructively received by a taxpayer when "it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it * * * if notice of intention to withdraw had been given." This Court and other courts have held that constructive receipt of salary or other amounts by the payee satisfies the provisions of section 267. *F. D. Bissett & Son, Inc.*, 56 T.C. 453, 461 (1971), and cases there cited; *Fetzer Refrigerator Co.* v. *United States*, 437 F. 2d 577 (C.A. 6, 1971); *C. D. Fountain*, 59 T.C. 696, 704–705 (1973). In fact section 1.267(a)–1(b)(1)(iii), Income Tax Regs., recognizes that constructive receipt satisfies the requirements of section 267 by providing as follows:

(iii) If, within the taxpayer's taxable year within which such items are accrued by the taxpayer and 2½ months after the close thereof, the amount of such items is not paid and the amount of such items is not otherwise (under the rules of constructive receipt) includible in the gross income of the payee.

Whether a taxpayer has constructively received payment of an amount is a factual determination to be made from the circumstances present in each case. *R. E. Hughes, Jr.*, 42 T.C. 1005, 1012 (1964).

On brief respondent concedes that the corporation "credited petitioner's account" with and "set apart" on its books the bonuses within the meaning of section 1.451–2(a), Income Tax Regs.[2] Respondent also conceded on brief that petitioner had unrestricted power to draw checks on the corporation's accounts but made some argument that the corporation did not have available cash for petitioner to have actually taken the bonuses in cash within 2½ months after the close of each of the years here in issue.

The record contains ample evidence to show that the corporation at all times during the years here in issue had sufficient cash for petitioner to have drawn a check for the full amount of his bonuses. The lowest cash balance of the corporation at any time during each of the years was in excess of the total amount of petitioner's bonuses and the record shows that the corporation had other liquid assets available and ample ability to borrow.

In his reply brief respondent tacitly recognizes that petitioner was in constructive receipt of his bonuses within 2½ months after the close of the taxable year for which the corporation claimed the deduction and relies primarily on the argument which he had also made in his original brief that for a subchapter S corporation constructive receipt should not be sufficient to meet the payment requirements of section

---

[2] Respondent in his original brief argued that petitioner had not shown a proper setting apart of the bonuses, but in his reply brief, citing his Rev. Rul. 72–317, 1972–1 C.B. 128, conceded that this requirement of the regulation had been met.

267 but actual receipt should be required. Respondent analogizes the provisions of section 267 to those of section 1375(f) which provides a 2½-month period after the close of the taxable year during which time a subchapter S corporation may dispose of the prior year's undistributed taxable income.[3] Respondent cites *Attebury* v. *United States*, 430 F. 2d 1162 (C.A. 5, 1970), and *McKelvy* v. *United States*, 478 F. 2d 1217 (Ct. Cl. 1973), for the proposition that "constructive receipt" does not apply to a subchapter S corporation.

We do not agree with respondent's contention that section 267 prohibits a deduction of an expense accrued by a subchapter S corpora-

---

[3] In *McKelvy* v. *United States*, 478 F. 2d 1217, 1225–1226 (Ct. Cl. 1973), the purpose of sec. 1375(f) is explained as follows:

"Section 1375(d), as we have said, was designed to permit the tax-free distribution of amounts previously taxed to the Subchapter S shareholder as constructive dividends from undistributed taxable income. However, there were substantial limitations on the shareholder's right freely to distribute from his PTI account. First, a distribution to qualify as coming from PTI, had to be in money. Treas. Reg. Sec. 1.1375–4(b), DeTreville v. United States, *supra*. Second, the PTI account is subject to reduction by the amounts allowable as deductions under section 1375(b) (pass-through of net operating losses). Third, a tax-free distribution in a later year, even if in cash and even if there are sufficient amounts in PTI to cover the distribution, cannot be made until *after* the corporation's current earnings and profits have been distributed. Treas. Reg. sec. 1.1375–4(b).

"Finally, there existed the problem of a termination of the Subchapter S status. During Subchapter S status, cash distributions would be applied in the following order: First, to current earnings and profits; second, to previously taxed undistributed taxable income (PTI); third, to accumulated earnings and profits (if any); and finally, as in regular corporations, to a reduction of basis to zero with any distribution in excess of basis governed by the rules of section 301(c)(3). However, once the Subchapter S election was terminated, the shareholder no longer had the privilege of a tax-free distribution out of PTI if accumulated earnings and profits were present. Of course, if there were no accumulated earnings and profits, then, after current earnings and profits were exhausted, the tax-free distribution could be made out of capital.

"The cumulative effect of all these factors gave rise to a situation in which the taxpayer possessed a potentially advantageous PTI account, but was often unable, for the above-stated reasons, to derive any tax benefit from it. Thus, Congress, in 1966, addressed itself to the problem of these so-called "locked-in" earnings.

"In order to prevent a lock-in of earnings, shareholders had been under pressure accurately to forecast the earnings by the year's end in order to prevent any amount from being taxed as a constructive dividend under section 1373(b). Congress' solution was to enact section 1375(f). Generally speaking, under this remedial provision, all money distributions made within 2½ months of the close of the corporation's previous fiscal year are treated as distributions of the corporation's undistributed taxable income for the previous year. In other words, Congress provided, with respect to money distributions, a limited relation-back provision. The money distribution was deemed to have been received in the prior fiscal year. If the standards of section 1375(f) were met, the shareholder was no longer faced with the problem of first having to exhaust his current earnings and profits. The shareholder simply reduced his undistributed taxable income for the previous year. The plaintiffs, in effect are telling us that they did not need section 1375(f) to provide them with a justification for relating back subsequent distributions to the previous year. Plaintiffs assert that the judicial doctrine of constructive receipt already existed with respect to Subchapter S to the same extent that the doctrine exists with respect to regular corporations. It is our view that the plaintiffs are completely in error in this assertion. While we are mindful of the general proposition that Subchapter S corporations are subject to the general corporate provisions, we must also realize that the Subchapter S provisions in certain areas displace the general corporate rules. This principle is most clearly evident with respect to the highly technical rules of Subchapter S, which allow, in very prescribed situations, non-dividend treatment."

[Fns. omitted.]

tion as due its sole stockholder where the payment is constructively received by the stockholder in the year it is accrued by the corporation or within 2½ months after the close of the corporation's taxable year. Constructive receipt means such a receipt as to require that the stockholder include the amount in his income when it is constructively received. All that section 267 requires for an expense to be deductible is that the amount be includable in the income of the payee in the year deducted by the payor or within 2½ months thereafter. Section 267 is designed to prohibit specified related persons from arranging expense deductions for an accrual basis taxpayer without a related cash basis taxpayer being required to include the payment in his income. There is no reason that any different rule should exist for a subchapter S corporation and its stockholder than that which exists for any other corporation and its stockholder. Normally, subchapter S corporations are subject to the same provisions as other corporations but in certain areas are subject to provisions only applicable to them. Section 1375(f) is one of the provisions applicable only to subchapter S corporations.

Section 1375(f) on which respondent relies deals with distributions of income by a subchapter S corporation. Section 1373 provides for the inclusion in the income of a stockholder of a subchapter S corporation of the "undistributed" corporate income at the end of the corporation's taxable year. Distributed income is taxable to the stockholders as dividends to the extent of corporate current earnings and profits. Section 1375(f) allows a "distribution" made by the corporation within 2½ months after the close of the corporation's taxable year to be treated in effect as a distribution prior to the close of the corporation's taxable year. The underlying basis of the decisions of the courts in the *Attebury* and *McKelvy* cases on which respondent relies is that the statute with respect to distributions by subchapter S corporations and the regulations thereunder have reference to "actual" distributions and receipts as distinguished from the reference to "constructive" receipt in section 1.451–2(a), Income Tax Regs. In this respect the court stated in the *Attebury* case (430 F. 2d at 1168):

Section 1373(c) defines "undistributed taxable income" as "taxable income * * * minus the *amount of money distributed* as dividends *during the taxable year* * * *" (Emphasis added.) Taxpayers argue that "when sections 1373(b) and (c) define the corporate income to be taxed to the shareholders as being the amounts distributed to shareholders during the year, plus the undistributed taxable income for the year, the constructive receipt doctrine steps in and defines the amounts which were distributed during the year."

We cannot agree with taxpayers' argument. In our opinion, the phrase "amount of money distributed * * * during the taxable year" means actual cash distributions to shareholders before the end of the corporate year.

The regulations to section 1373 elaborate upon the meaning of this phrase. Regulation sec. 1.1373–1(f) provides:

"(f) *When distributions are considered made.* Except as otherwise provided in sec. 1.1375–5, an actual distribution by an electing small business corporation will be considered to be made only at the time it is received by the shareholder, and earnings and profits of such corporation shall not be reduced with respect to such distribution before such time."

Taxpayers contend that the wording of the regulation—"received by the shareholder"—means actual receipt of cash *or* cash unqualifiedly available to stockholders (thus constructively received by stockholders as per the constructive receipt doctrine). Taxpayers seem to overlook the phrase "actual distribution" in the above-quoted regulation. After viewing the entire regulation, we find no merit in taxpayers' attempt to assimilate the word "received" to the definition of that word in section 451(a), as contained in the constructive receipt rule of Regulation sec. 1.451–2(a), * * *. The import of Regulation sec. 1.1373–1(f), when read in context with section 1373(c), the regulations, and the legislative history discussed below, is that a distribution is deemed to occur only when it is actually paid by the corporation.

[Fns. omitted.]

There is nothing in the holding of the *Attebury* case or the *McKelvy* case to suggest that the doctrine of constructive receipt is not applicable to the stockholder of a subchapter S corporation except when there is a provision such as those in sections 1373 and 1375(f) and the regulations issued pursuant thereto which requires that there be an "actual" payment.

We conclude that the corporation properly deducted in each of the years 1966 and 1967 the $20,800 bonus credited to petitioner and that respondent improperly increased the income reportable by petitioner in this amount.

Because of the issues disposed of by agreement of the parties,

*Decision will be entered under Rule 155.*