JEROME CASTREE INTERIORS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5863-73.    Filed July 14, 1975.

*Joseph A. Lamendella* and *Eugene F. LaPorte,* for the petitioner.

*Alan M. Jacobson,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in the petitioner's Federal income taxes:

| TYE Oct. 31— | Deficiency |
|---|---|
| 1969 | $10,032.08 |
| 1970 | 8,998.62 |
| 1971 | 8,640.01 |

The only issue to be decided is whether, for each year at issue, two of the petitioner's shareholders constructively received bonuses during the period consisting of its taxable year and 2½ months thereafter, for purposes of section 267 of the Internal Revenue Code of 1954, relating to the denial of certain deductions with respect to transactions between related taxpayers.

FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Jerome Castree Interiors, Inc. (the corporation), is a corporation organized under the laws of the State of Illinois. It had its principal place of business in Rockford, Ill., at the time it filed its petition herein. The corporation filed its Federal income tax returns, using the accrual method of accounting, for its taxable years ending October 31, 1969, 1970, and 1971, with the Internal Revenue Service Center, Kansas City, Mo.

The corporation was engaged in the interior decorating business during its 1969 through 1971 taxable years. For such years, its officers held the following positions and owned the following percentages of its stock, all of which was common:

|  | Position | Percentage of stock |
| --- | --- | --- |
| Jerome Castree | President | 51 |
| Anthony Valiulis | Vice president | 15 |
| Charles Reiter | Secretary | 15 |
| Jack Bonavia | Treasurer | 15 |

Samuel Castree, Jerome Castree's brother, owned 4 percent of the corporation's stock and was its general manager during such years. As president, Jerome Castree was primarily responsible for the corporation's purchases and sales of merchandise. As general manager, Samuel Castree handled its employee and financial matters. Both Jerome and Samuel Castree had general authority to withdraw funds from the business for personal and business purposes without securing prior approval. If one of them withdrew funds for a personal purpose, the funds were charged to the account of that person. No other person associated with the corporation had such authority.

In mid-October 1969, 1970, and 1971, Jerome and Samuel Castree met to consider bonuses for the corporation's employees; at such times, they decided that the corporation should pay bonuses totaling $31,000 for each year, to be divided among the employees. They decided that the 1969 and 1970 bonuses should be allocated as follows:

|                      | 1969     | 1970     |
|----------------------|----------|----------|
| Jerome Castree       | $12,500  | $12,000  |
| Samuel Castree       | 6,500    | 6,000    |
| Jack Bonavia         | 3,000    | 4,000    |
| Charles Reiter       | 4,000    | 4,000    |
| Anthony Valiulis     | 4,000    | 4,000    |
| Joan Lindquist       | 1,000    | 1,000    |

For 1971, Jerome and Samuel Castree decided that their own bonuses should be $12,000 and $6,000, respectively; Joan Lindquist was paid a $1,000 bonus in December 1971. Following their general practice, Jerome and Samuel Castree took no notes of the meetings.

On November 14, 1969, 1970, and 1971, the corporation's board of directors and shareholders held their combined annual meetings. At such times, Jerome and Samuel Castree reported the amounts of bonuses that they had decided should be paid to the officers for such years. Notes were taken of the meetings, and Samuel Castree delivered them to the corporation's accountant, who prepared the minutes of the meetings in their final form. In part, such minutes declare that the corporation adopted the following resolutions:

BE IT FURTHER RESOLVED, that the bonus for the 1969 [1970, or 1971] fiscal year ending be fixed at $31,000.00. This amount to be spread to the officers who have participated in the continuing growth of the corporation and that direction to be by the president of the corporation himself. It is still understood that if the amounts of this bonus is [sic] not paid with[in] the 2½ month time limit as described by IRS, it is automatically become [sic] a note payable and this amount should be paid within 9 months after the end of the fiscal year, however, no bonuses to be paid within the 2½ time element period unless all accounts payable have been justified and notes payable so as not to par [sic] the financial condition of the company.

IT IS ALSO NOTED, that anytime during the IRS Revue [sic] if the IRS deem it impossible for reasons unknown to find that the bonuses are not declared deductable then it is the responsibility of the officers to pay back all of the bonuses paid to them and they at their discretion may deduct from their income tax return.

The minutes were signed by Mr. Reiter, and were approved by Jerome Castree and Mr. Bonavia. Samuel Castree did not review the minutes until the Internal Revenue Service audit of the corporation.

For 1969 through 1971, the full amount of each year's bonuses was entered in an Accrued Bonus Payable account on the corporation's books and records. On each of its 1969, 1970, and 1971

Federal income tax returns, the corporation reported the full amount of that year's bonuses as a single expense. No records were made of the amounts due individual recipients, and the bonuses due Jerome and Samuel Castree were not credited to their personal drawing accounts. Jerome and Samuel Castree's 1969 bonuses were paid to them in March and April 1970; their 1970 bonuses were paid to them in March 1971; and their 1971 bonuses were paid to them after April 7, 1972. For the years 1969 through 1971, they filed Federal income tax returns using the cash method of accounting. They reported their 1969 bonuses on their 1970 returns, their 1970 bonuses on their 1971 returns, and their 1971 bonuses on their 1972 returns.

At the end of its taxable years 1969, 1970, and 1971, the corporation had the following cash balances and working capital:

|  | 1969 | 1970 | 1971 |
| --- | --- | --- | --- |
| Cash balances | $8,255.15 | $15,107.80 | $14,426.71 |
| Working capital [1] | 99,484.10 | 112,468.99 | 162,443.72 |

During the years 1969 through 1972, a local bank was willing to lend the corporation amounts up to $50,000 to $60,000 on a note. Had the corporation wanted to borrow funds to pay the yearly bonuses, the bank would have loaned it funds for such purpose. The bank required personal guarantees from Jerome Castree and Mr. Bonavia on its loans to the corporation, but it did not require them to provide personal financial statements and did not require any other security on the loans.

The corporation deducted the full amount of the 1969, 1970, and 1971 bonuses on its Federal income tax returns for such years. In his notice of deficiency, the Commissioner determined that Jerome and Samuel Castree's yearly bonuses had not been paid within the year or within $2\frac{1}{2}$ months after the close therof and disallowed deductions for their bonuses.

### OPINION

The deductibility of the bonuses for the Castrees depends upon the applicability of section 267, which provides in part:

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—
* * *

(2) UNPAID EXPENSES * * *.—In respect of expenses, otherwise deductible under section 162 or 212, * * *

---

[1] Working capital is accounts receivable plus inventory less the following amounts: accounts payable, mortgages due in less than a year, and taxes for 1969 and 1970.

(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses * * * are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

In *Geiger & Peters, Inc.,* 27 T.C. 911, 917 (1957), we said that the purpose for the enactment of the predecessor of section 267:

is to eliminate the former tax avoidance practice of accruing unpaid expenses and interest payable to a closely related taxpayer who, because he is on the cash basis, reports no income. Because of the relationship between the taxpayers, payment might never be required or might be postponed until the related taxpayer has offsetting losses. *Platt Trailer Co.,* 23 T.C. 1065, 1068, citing House Ways and Means Committee Rept. No. 1546, 75th Cong., 1st Sess. (1937), p. 29.

The parties in this case agree that the relationship referred to in section 267(a)(2)(C) existed between the Castrees and the corporation and that the Castrees used the cash method for computing their taxable income. The parties also agree that the bonuses were not in fact paid to the Castrees within the period described in section 267(a)(2)(A), but the petitioner contends that section 267 is not applicable because the Castrees constructively received the bonuses within that period. Whether the doctrine of constructive receipt applies to the bonuses so as to require the Castrees to include them in their taxable income within the period described in section 267(a)(2)(A) is the issue we must decide.

Income is constructively received by an individual "in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." Sec. 1.451-2(a), Income Tax Regs.; *Robert B. White,* 61 T.C. 763 (1974). It should always be remembered that the doctrine of constructive receipt may be used to require a

person to pay a tax on an item which he does not have in hand *(Ross v. Commissioner,* 169 F. 2d 483 (1st Cir. 1948), revg. on another issue a Memorandum Opinion of this Court), and for that reason, the courts have applied the doctrine sparingly *(R. E. Hughes, Jr.,* 42 T.C. 1005 (1964); *C. E. Gullett,* 31 B.T.A. 1067 (1935)). In our opinion, the facts of this case clearly do not warrant an application of the doctrine.

Within the period described in section 267(a)(2)(A), nothing was done by the petitioner to credit the bonuses to the accounts of the Castrees, to set the bonuses apart for them, or otherwise to make the bonuses available to them. In October of each year at issue, Jerome and Samuel Castree determined the amount of the bonus to be paid to each employee, including the amounts to be paid to themselves, but they made no record of their determination. *Van W. Peabody,* 5 T.C. 426 (1945); accord, *Lacy Contracting Co.,* 56 T.C. 464 (1971). Furthermore, even though the Castrees were the controlling shareholders of the corporation, their decision did not, in and of itself, constitute action by the corporation. *C. E. Gullett, supra.* At the annual meeting of the board of directors and shareholders in November of each year, the Castrees did inform the other officers of the bonuses to be paid them, but even at that time, no record was made of the amount payable to each employee. The only formal action taken by the board of directors with respect to the bonuses was to adopt a resolution, which appears to provide that the bonuses are not to be paid, if to do so would impair the financial condition of the corporation; thus, the board thereby established a condition on the payment of the bonuses. The only entry made on the books and records of the corporation each year with respect to the bonuses was the entry with respect to the total amount of bonuses payable; no entry was made on those books and records as to the amount of bonuses to be paid to each employee, including the Castrees, nor were the amounts of their bonuses credited to the drawing accounts of the Castrees. In summary, neither the informal determination by the Castrees, nor the action by the board of directors, nor the entry on the books and records of the corporation was such as to cause the bonuses to be includable in the taxable income of the Castrees prior to the time they actually received such bonuses. *Van W. Peabody, supra;* accord, *Lacy Contracting Co., supra,* and *R. E. Hughes, Jr., supra;* compare, e.g., *Robert B. White, supra,* and *Geiger & Peters, Inc., supra*

(constructive receipt of amounts credited to individual accounts); *C. D. Fountain,* 59 T.C. 696 (1973), and *Hyplains Dressed Beef, Inc.,* 56 T.C. 119 (1971) (constructive receipt of amounts stated in corporate minutes); *F. D. Bissett & Son, Inc.,* 56 T.C. 453 (1971) (constructive receipt of amounts recorded on memorandums attached to corporate books).

The petitioner attempted to obviate the problem resulting from the failure to make any record of the individual bonuses by arguing that small, closely held corporations are not held to the technical niceties that larger corporations can afford. *Fetzer Refrigerator Co. v. United States,* 437 F. 2d 577 (6th Cir. 1971). However, even in that case, the amounts at issue were credited to an account primarily composed of amounts due the shareholders. It is clear that in the case of any corporation, constructive receipt is not applicable unless some record is made of the amount due the shareholder. *Lacy Contracting Co., supra; R. E. Hughes, Jr., supra;* compare *Hyplains Dressed Beef, Inc., supra.*

The petitioner also argued that Jerome and Samuel Castree could have paid themselves their yearly bonuses after the October meetings, since they had authority to withdraw funds from the business at any time without prior approval. They asserted that the minutes of the meetings of the board of directors and shareholders did not accurately reflect the actions taken at such meetings and that although the corporation may have lacked sufficient cash on hand to pay the bonuses at the end of each year at issue, it could have borrowed the necessary funds. However, a shareholder is not taxable merely because he has the authority to influence the actions of the corporation and the authority to withdraw funds; funds are not constructively received until the corporation takes the necessary action to set them apart for him. *McDuff Turner,* 5 T.C. 1261 (1945); *Van W. Peabody, supra;* cf. *Eckhard v. Commissioner,* 182 F. 2d 547 (10th Cir. 1950), affg. on this issue 12 T.C. 384 (1949); *R. E. Hughes, Jr., supra; C. E. Gullett, supra.* In addition, we cannot disregard the provisions of the resolution in the minutes of the meetings of the board of directors. Such minutes constitute prima facie evidence of the actions taken by the corporation (*Young Door Co., Eastern Division,* 40 T.C. 890 (1963)), and those minutes were approved by the appropriate corporate officials. Under such circumstances, we cannot disregard their contents merely on the basis of the testimony of Samuel Castree that they were incorrect. Finally,

although the corporation could borrow funds from a local bank, any note given during the years at issue would have to have been guaranteed by Jerome Castree and by Mr. Bonavia. Thus, the corporation's ability to secure the funds with which to pay the bonuses was not unconditional. *H & H Drilling Co.*, 15 T.C. 961 (1950); *Samuel Keller Jacobs*, 22 B.T.A. 1166 (1931); see *George W. Johnson*, 25 T.C. 499 (1955). Hence, in our judgment, there were substantial and effective restrictions on the Castrees' power to withdraw their bonuses.

In addition, the conduct of Jerome and Samuel Castree is inconsistent with the position now urged by the petitioner. It contends that the bonuses were constructively received by the Castrees when they met in October of each year and decided on the amounts to be paid to them, but the Castrees did not report the bonuses as income received by them at such times—they reported them as income received in the following year. Nothing happened in the following year to cause the bonuses to be treated as constructively received by the Castrees prior to their actual payment. Thus, in effect, the Castrees reported the bonuses as income when they were paid, not as constructively received within the period consisting of the corporation's taxable year and 2½ months after the close thereof. While such treatment is not determinative of the issue of constructive receipt, it is relevant to the inquiry. E.g., *F. D. Bissett & Son, Inc., supra.* Their consistent reporting of the bonuses in the year of payment indicates that they, the petitioner's controlling shareholders, did not consider the bonuses income until actual payment. Such treatment of the bonuses by the controlling shareholders of the petitioner furnishes additional support for our conclusion that the bonuses were not set aside for the Castrees prior to their payment. Accord, *Van W. Peabody*, 5 T.C. 426 (1945).

*Decision will be entered for the respondent.*