T.C. Memo. 2001-294

UNITED STATES TAX COURT

TESCO DRIVEAWAY CO., INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10966-97.                    Filed November 6, 2001.

Charles E. Hammond, for petitioner.

Dennis R. Onnen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, Judge:  Respondent determined the following
deficiencies, late-filing additions, and penalties with respect
to petitioner's Federal income taxes:

|  |  | Additions to Tax | Accuracy-related Penalty |
|  |  |  |  |
| TYE July 31 | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| 1992 | $5,143 | $1,029 | $1,029 |
| 1993 | 14,124 | 3,531 | 2,825 |
| 1994 | 43,837 | 10,959 | 8,767 |

After concessions by the parties, only one substantive item remains in issue. The parties dispute whether petitioner can deduct $100,000 in compensation paid to petitioner's sole shareholder and his sons after the close of petitioner's fiscal year ended July 31, 1994. We hold that petitioner is not entitled to the deduction for that year.

Petitioner also challenges the late-filing additions to tax and the accuracy-related penalties determined by respondent. We sustain respondent's determinations.

### FINDINGS OF FACT

Most of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated by this reference.

Petitioner's principal place of business was Kansas City, Missouri, when it filed the petition in this case. Petitioner is in the business of transporting trucks from manufacturers or dealers to other dealers or end-users. Doyce Gentry was the sole shareholder, officer, and director of petitioner, and had sole check-writing authority over petitioner's bank accounts. At all relevant times, petitioner was an accrual method taxpayer using a

July 31 fiscal year, and Doyce Gentry and his sons were cash method taxpayers using the calendar year.

Petitioner had sufficient funds in its bank accounts prior to the end of its 1994 fiscal year to pay $100,000 in compensation to Doyce Gentry and his sons. Petitioner did not pay compensation to Doyce Gentry or his sons until after the end of that fiscal year. Indeed, except for the $100,000 in compensation at issue here, petitioner had not awarded and had not paid any compensation to Doyce Gentry or his sons from the time of its formation in 1991 until after the end of petitioner's 1994 fiscal year.

Petitioner's bylaws provided that its officers and employees shall receive salaries and other compensation "as shall be determined by resolution of the Board of Directors * * * or by employment contracts entered into by the Board of Directors." The Board of Directors did not adopt any formal resolution awarding or setting the amount of the compensation prior to the end of petitioner's 1994 fiscal year. Nor was there any prior written agreement between petitioner and the Gentrys, such as an employment contract, setting the amount of compensation that would be awarded to them.

Petitioner took no formal action prior to the end of its 1994 fiscal year to segregate physically or set apart the $100,000 in compensation for Doyce Gentry and his sons. Nor did

petitioner make any entry in its books of account to reflect the award of $100,000 in compensation prior to the end of the fiscal year. Petitioner made no specific allocation of the $100,000 in compensation between Doyce Gentry and each of his two sons until after the end of the fiscal year.

Petitioner filed an Employer's Quarterly Federal Tax Return, Form 941, for the fourth calendar quarter of 1994, showing $152,625 in compensation as subject to withholding for that quarter. This amount included the $100,000 in compensation paid to Doyce Gentry and his sons after the end of petitioner's fiscal year. The entire period covered by the Form 941, the fourth quarter of 1994, occurred after the end of petitioner's fiscal year. Petitioner did not file a Form 941 including the $100,000 in compensation for any prior quarter ending or beginning prior to July 31, 1994. Petitioner's Federal income tax returns were due and filed on the following dates:

| TYE July 31 | Date Return Due | Date Return Filed |
|-------------|-----------------|-------------------|
| 1992 | Oct. 15, 1992 | Feb. 9, 1993 |
| 1993 | Oct. 15, 1993 | June 13, 1994 |
| 1994 | Oct. 17, 1994 | Mar. 1, 1995 |

Petitioner obtained no extensions of time for filing any of these returns.

### ULTIMATE FINDING OF FACT

Doyce Gentry and his sons did not constructively receive the $100,000 of compensation prior to the end of petitioner's

fiscal year ended July 31, 1994.

OPINION

## Issue 1.  Deduction for Compensation Not Paid by Petitioner During Its Fiscal Year

Section 267[1] requires the matching of deductions and income between related taxpayers.  It provides that the payor may not deduct an obligation owing to a related payee until the related payee would be required to recognize the income by reason of his method of accounting.  Sec. 267(a)(2).

Doyce Gentry is petitioner's sole shareholder.  Mr. Gentry is therefore related to petitioner under section 267(a)(2)(B).  See sec. 267(b)(2).  In addition, Doyce Gentry's stock ownership is attributed to his sons because they are his lineal descendants.  See sec. 267(b)(1), (c)(2), (c)(4).  Doyce Gentry's sons therefore are also related to petitioner for purposes of section 267(a)(2)(B).

Respondent denied petitioner's deduction of $100,000 in accrued compensation under section 267(a)(2) because petitioner is an accrual method taxpayer, Doyce Gentry and his sons are cash method taxpayers, and the compensation was not actually paid by petitioner to the Gentrys by the close of petitioner's fiscal year on July 31, 1994.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner argues that its deduction should be allowed because Doyce Gentry and his sons constructively received the compensation by the end of petitioner's fiscal year on July 31, 1994, and were therefore required under section 451 to include that income when it was constructively received. Petitioner admits that it has the burden of proof to show that Doyce Gentry and his sons constructively received the compensation by July 31, 1994.

Section 1.451-2, Income Tax Regs., defines constructive receipt as follows:

> Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

Petitioner argues that since Doyce Gentry was petitioner's sole officer, director, and owner, and had sole check-writing authority over petitioner's accounts, he had the unfettered ability to withdraw the compensation at any time, and thus should be treated as if he constructively received the compensation by the end of petitioner's fiscal year.

Respondent notes that Doyce Gentry may have had the unfettered _ability_ to withdraw funds from petitioner's bank accounts, but he did not have the _right_ to receive the

compensation from petitioner until petitioner followed proper corporate formalities in awarding that compensation. Respondent cites petitioner's bylaws which provide:

> Officers and other employees of the corporation shall receive such salaries or other compensation as shall be determined by resolution of the Board of Directors, adopted in advance or after the rendering of the services, or by employment contracts entered into by the Board of Directors. * * *

The parties have stipulated that petitioner made no corporate resolution authorizing or allocating the compensation prior to the end of petitioner's fiscal year. Nor did petitioner introduce any documentary evidence to suggest that petitioner took any action whatsoever to authorize or determine the amount of the compensation prior to the end of its fiscal year.

Petitioner relies entirely on oral testimony to support its claim that the compensation was authorized prior to the end of petitioner's fiscal year. But Doyce Gentry's testimony was unclear and contradictory. He initially testified on redirect examination that he could not recall ever informing his accountant how much compensation to accrue:

> Q. Did you ever advise Mr. Livengood how much he should accrue or how much should be accrued with regard to your compensation?
> A. I can't recall that I ever did.
> Q. Well, how did he know how much that he was supposed to put on the books with regard to the accrual?
> A. Well, he and I--I could tell by the bank statements and information that he was giving me there that there was excess money there that needed--that doesn't necessarily need to be kept

in the corporation.

After a break, Mr. Gentry testified that he discussed the matter with petitioner's accountant, but his testimony was at best vague as to whether the precise amounts and allocations were determined at that time:

> Q. Did you ever advise Mr. Livengood as to how much compensation should be approved?
> A. Well, that was when I tried to make the statement early on that when I made that conscious decision that there was funds there to be disbursed, that's when I told the accountant, you know, whatever is necessary to do with this money here let's do it.
> Q. Do you recall when that occurred, at least with regard to the 1994 Tesco return?
> A. Well, I'm sure that it occurred before the 31st of July. It didn't--it wasn't a spur of the moment thing.

The accountant testified that Mr. Gentry told him to accrue $100,000 for compensation for Doyce Gentry and his sons "probably before or thereabouts" the end of the fiscal year. The accountant did not testify that he received any direction as to the division of the $100,000 between Doyce Gentry and his two sons prior to the end of the fiscal year.

Moreover, the accountant reported the compensation for employment tax purposes on Form 941 for the fourth quarter of 1994--which commenced after the end of petitioner's fiscal year. Virtually the same constructive receipt language that applies to income taxes also applies to employment taxes. See Cohen v. United States, 63 F. Supp. 2d 1131, 1135 (C.D. Cal. 1999) ("FICA

taxes to attach upon the actual (or constructive) receipt of wages"); Mazur v. Commissioner, 986 F. Supp. 752 (W.D.N.Y. 1997) (upholding regulation).  Compare sec. 1.451-2, Income Tax Regs., with sec. 31.3121(a)-2(b), Employment Tax Regs.  Petitioner's treatment of the Gentrys' compensation as not constructively received during its 1994 fiscal year for employment tax purposes is inconsistent with its claim of constructive receipt for income tax purposes.

We agree with respondent that petitioner has failed to meet its burden of proving that Doyce Gentry or his sons constructively received the compensation prior to the end of petitioner's fiscal year.  In order to constructively receive funds, the recipient must have both the power and the right to withdraw the funds from the taxpayer's account.  Jerome Castree Interiors, Inc. v. Commissioner, 64 T.C. 564 (1975), affd. without published opinion 539 F.2d 714 (7th Cir. 1976).  Even if we were to view Mr. Gentry's and petitioner's accountant's testimony in a light most favorable to petitioner, petitioner did not comply with the terms of its own bylaws for awarding compensation by the end of the fiscal year.  Petitioner is a legal entity separate from Mr. Gentry.  It must act through proper corporate procedures.  We cannot overlook the lack of corporate formalities simply because Mr. Gentry had broad power to control the corporation.  Otherwise, as respondent brought

out during cross-examination,[2] Mr. Gentry would be able to make undetected retroactive corporate allocations after the end of the petitioner's fiscal year.

Case law under former section 267[3] fully supports respondent's determination. In both <u>Jerome Castree Interiors, Inc. v. Commissioner</u>, <u>supra</u>, and <u>Lacy Contracting Co. v. Commissioner</u>, 56 T.C. 464 (1971), the Court disallowed the claimed accruals, holding that the corporation must determine,

---

[2] Q.  Isn't it possible that you could
       have told Dal Livengood some time after
       July 31, '94, that I believe I should
       have a salary based on the current fiscal
       conditions of the company for 1994 of
       $88,100.  Is it possible --
    A.  No, no. * * * Not after the 31st of July I
       couldn't have done that
    Q.  And why is that? * * *
    A.  Well, it's not legal, is it?

[3]Former sec. 267, which was repealed in 1984, disallowed a deduction for obligations payable to a related taxpayer if the obligation was not paid within 2-1/2 months after the end of the taxpayer's fiscal year, and if the amounts would not be includable by the related recipient under its method of accounting for the taxable year during which the taxpayer's deduction accrued. "Because an accrued expense is deductible by a taxpayer under the accrual method of accounting only in the taxable year in which it accrues, a deduction disallowed under sec. 267(a) was permanently lost.  It could not be deducted at some subsequent time when payment was made."  Staff of the Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 at 541 (J. Comm. Print 1984).  The disallowance rule of former sec. 267 was replaced in the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 174, 98 Stat 704, with the current rule deferring the deduction until recognized by the related recipient.  A more restrictive view of constructive receipt may be appropriate under the current statutory scheme, which only defers the deduction until the year of payment rather than disallowing it entirely.

through proper corporate procedures, the specific amount of compensation to be paid to each recipient.  The authorization of an unallocated pool of compensation to be divided among the recipients is not sufficient for constructive receipt, even as in Jerome Castree Interiors, Inc., where the allocation had been made orally at the board meeting but was not reflected in the formal resolution, and even as in Lacy Contracting, Inc., where the controlling shareholder had the ultimate power to make the allocation unilaterally.  As stated by the Court in Jerome Castree Interiors, Inc.:

> It is clear that in the case of any corporation, constructive receipt is not applicable unless some record is made of the amount due the shareholder.
> * * *
>
>      * * * a shareholder is not taxable merely because he has the authority to influence the actions of the corporation and the authority to withdraw funds; funds are not constructively received until the corporation takes the necessary action to set them apart for him.
> * * * [Jerome Castree Interiors, Inc. v. Commissioner, supra at 570; emphasis added; citations omitted.]

Similarly, in Kaw Dehydrating Co. v. Commissioner, 74 T.C. 370 (1980), the Court held that the controlling shareholder was not in constructive receipt of oral bonuses where the corporate resolutions stated only that the bonuses had been "discussed", but not that they had been approved.  "In the instant case, as we have noted, there was no resolution nor any subsequent, timely corporate record to support the proposition that a binding resolution had been intended."  Id. at 377.

Petitioner has failed to establish that it followed proper formalities entitling Doyce Gentry or his sons to withdraw any compensation prior to the end of petitioner's fiscal year. Like the taxpayers in Jerome Castree Interiors, Inc. v. Commissioner, supra, and Lacy Contracting Co. v. Commissioner, supra, petitioner had not formally allocated the compensation between Mr. Gentry and his sons by the end of petitioner's fiscal year. Moreover, petitioner's case is much weaker than were the taxpayers' cases in Jerome Castree Interiors, Inc. and Lacy Contracing Co. Not only did petitioner fail formally to allocate the compensation between Mr. Gentry and his sons by the end of petitioner's fiscal year, petitioner did not even authorize the total unallocated amount of compensation through proper corporate procedures by the end of its fiscal year.

Petitioner attempts to distinguish Jerome Castree Interiors, Inc. because the bonuses there had to be allocated between five shareholders, while in the case at hand the compensation only had to be allocated between one shareholder and two employees. This distinction makes no difference. To actuate constructive receipt, a specific amount must be "credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time". Sec. 1.451-2(a), Income Tax Regs. It does not matter what ownership or corporate positions are held by the potential recipients of the

unallocated compensation pool.

Petitioner next argues that there was no record in _Jerome Castree Interiors, Inc._ of the bonus determination by the end of the calendar year. Similarly here, petitioner made no record whatsoever of the bonus determination by the end of its fiscal year. Petitioner argues that the shareholders in _Jerome Castree Interiors, Inc._ did not include the income in the same calendar year as the corporation's proposed deduction. Here, petitioner chose to use a fiscal year ending July 31, 1994. Petitioner cannot be treated as a calendar year taxpayer for the purpose of determining when the deduction is allowed and a fiscal year taxpayer for all other purposes.

Finally, petitioner argues that the corporate resolution in _Jerome Castree Interiors, Inc._ authorizing the pool of compensation specifically conditioned payment on the corporation's ability to make payment. Here, there was no corporate resolution authorizing the payment. Certainly a corporate resolution authorizing payment conditioned on the corporation's ability to make payment (when the corporation in fact was able to do so) is better than no resolution at all. The factual distinctions identified by petitioner are either irrelevant or show that the taxpayers in _Jerome Castree Interiors, Inc._ had a stronger case for constructive receipt than petitioner has here.

Petitioner also tries to distinguish Kaw Dehydrating Co. v. Commissioner, supra, on five grounds. First, petitioner argues that there were four shareholder bonuses at issue in Kaw Dehydrating Co. and only one shareholder payment here. It does not matter how many of the employees who were entitled to share in the bonuses were also shareholders. What matters is whether the corporation, following proper corporate formalities, has timely determined the specific amount payable to each person who is alleged to have constructively received the funds.

Second, petitioner argues that in Kaw Dehydrating Co. "the monies were never timely credited to a personal account nor physically set aside so that they could be withdrawn at any time by the individual shareholders after the determination." Petitioner similarly failed to segregate the money for Mr. Gentry and his sons, either physically or by an appropriate accounting entry, prior to the end of petitioner's fiscal year.

Third, petitioner argues that in Kaw Dehydrating Co. "the bonuses were paid well over a year after they were allegedly distributed to the individual shareholders."[4] In determining whether the constructive receipt doctrine applies, the actual timing of the payment is not decisive. The funds are treated as

---

[4]Petitioner misstates the facts in Kaw Dehydrating Co. v. Commissioner, 74 T.C. 370 (1980). The bonuses were awarded on Oct. 3, 1973, and were paid on July 15, 1974--9 months after the award and 6.5 months after the end of the corporation's tax year.

"paid" when constructively received.

Fourth, petitioner argues that the Kaw Dehydrating Co. bonuses were adjusted after the close of the fiscal year. We do not know whether the payment allocation here was likewise adjusted after the end of petitioner's fiscal year because there is no evidence to show what was determined prior to the end of petitioner's fiscal year. Petitioner offered no evidence to show that the allocation among the Gentrys had been made prior to the end of petitioner's fiscal year. It is sufficient here that the potential for a post-fiscal-year adjustment exists because petitioner took no formal action to set the specific allocation prior to the end of its fiscal year.

Finally, petitioner argues that in Kaw Dehydrating Co., the "stockholders reported their respective bonuses on their personal income tax returns in the year following the year in which they were awarded." This statement raises three potential issues. First, should the constructive receipt doctrine apply differently depending on the length of time between the alleged constructive receipt and the actual receipt? Second, how should the recipient's treatment of the item on the recipient's tax return affect the payor's right to a deduction? Finally, does the rule operate differently depending on whether the payor has a fiscal or a calendar tax year?

Petitioner suggests that the constructive receipt doctrine

should apply differently depending on whether actual receipt occurs during the same or the following calendar year. We disagree with petitioner's suggestion. The constructive receipt doctrine necessarily looks to the facts at the time of alleged constructive receipt. Events occurring later, such as the timing of the actual payment, should not affect the functioning of the doctrine.

Similarly, the statutory language does not focus on the date that the recipient reported the income, but rather on the date that the income should have been reported. The statute refers to the income's being "includible" not "included" in the gross income of the recipient. Sec. 267(a)(2)(A). Under a literal reading of the statute, an error in accounting for the item by the recipient, another taxpayer, would not improve petitioner's position.

However, the Court in Jerome Castree Interiors v. Commissioner, supra, did suggest that the recipient's failure to include the funds in income at the time of alleged constructive receipt is a factor to be considered in denying constructive receipt, because it shows that the recipient did not believe that constructive payment had been made. Id. at 571. Here, the only documentary evidence submitted to the Court, petitioner's Form 941, shows that the parties treated the compensation as earned in the fourth quarter of 1994--a period commencing after

the end of petitioner's fiscal year. Unsubstantiated testimony that the Gentrys reported the income on their 1994 calendar year returns, even if true, does not show that they treated the funds as constructively received at or prior to the end of petitioner's fiscal year on July 31, 1994. After all, payments actually received by the Gentrys in the 5 months following the end of petitioner's fiscal year would still be within their calendar year. Petitioner has failed to show either that the Gentrys should have included the funds in gross income by the end of petitioner's fiscal year, or that the funds were in fact so included.

Finally, petitioner's comment implies that the constructive receipt doctrine should apply differently where the payor operates on a fiscal year. Petitioner's notion seems to be that since petitioner's fiscal tax year ended in the middle of the Gentrys' calendar tax years, funds received or taken into income by the end of the calendar year should be treated as constructively received during the same "year," and so the deduction should be allowed.

There are other matching provisions in the Internal Revenue Code that do not require matching precision. See, e.g., sec. 83(h) (deduction allowed for taxable year in which ends the taxable year in which item included in gross income of person who performed services); sec. 404(a)(6) (payment deemed made on

last day of preceding tax year if paid by due date of payor's tax return, including extensions); former sec. 267(a)(2) (repealed 1984) (payments made within 2-1/2 months after end of the payor's taxable year relate to that year).  However, section 267(a)(2) requires a precise matching of the date of the deduction and the date that the amount is includable in the gross income of the recipient:

> any deduction allowable under this chapter in respect of such amount shall be allowable <u>as of the day as of which such amount is includible in the gross income of the person to whom the payment is made</u> (or, if later, as of the day on which it would be so allowable but for this paragraph). * * * [Sec. 267(a)(2) (flush language); emphasis added.]

This language does not permit a payment made after the end of the fiscal year but during the calendar year to relate back. Petitioner chose to use a fiscal year.  "Under present law * * * [current section 267], an accrual payor is effectively placed on the cash basis for all payments to related cash basis payees, and the payor's deduction therefore is pushed over to the next year if payment is made the stroke after midnight of the last day of the accrual year."  Bittker & Lokken, Federal Taxation of Income, Estates & Gifts, par. 78.2.1, at 78-11 (2d ed. 2001). Petitioner cannot deduct payments made after the end of its fiscal year merely because they were made prior to the end of the calendar year.  Petitioner's efforts to distinguish <u>Kaw Dehydrating Co. v. Commissioner</u>, 74 T.C. 370 (1980), on factual

grounds are unavailing.

The cases cited by petitioner in support of its position that the funds were constructively received prior to end of its fiscal year are not on point. Petitioner cites White v. Commissioner, 61 T.C. 763 (1974), and Haack v. Commissioner, T.C. Memo. 1981-13, for the proposition that Doyce Gentry's unfettered power should be enough to establish constructive receipt. In both cases, the specific amount of the constructive recipient's compensation had been determined in advance through proper corporate action. In White, the corporation had determined the amount of the shareholder's bonus in advance through a proper corporate resolution and had given him the power to withdraw the funds whenever he wished. White v. Commissioner, supra at 764. Similarly, in Haack v. Commissioner, supra, the bonuses had been awarded to the controlling shareholder through proper corporate resolutions prior to the end of the corporation's fiscal year. This Court in White and Haack did not address the issue here--whether the employee would have been in constructive receipt of the compensation if the corporation had not determined and awarded the compensation in advance through proper corporate procedures.

Petitioner also cites Fetzer Refrigerator Co. v. United States, 437 F.2d 577 (6th Cir. 1971), O.H. Kruse Grain & Milling v. Commissioner, T.C. Memo. 1959-110, affd. 279 F.2d 123 (9th

Cir. 1960), and Miller-Dunn v. Commissioner, a Memorandum Opinion of this Court dated Feb. 28, 1946, for the proposition that no formal corporate resolution is required for constructive receipt. Fetzer Refrigerator Co. and O.H. Kruse Grain & Milling involved contractual rents that had been accrued on the corporate taxpayer's books prior to the end of its fiscal year. In each case the rental amounts were set forth in a lease agreement and were reflected by entries on the corporation's books as of the end of the fiscal year, giving the shareholder/lessor the right as well as the power of withdrawal. Fetzer Refrigerator Co. v. United States, supra at 579 ("Although Mr. Fetzer never physically received the amounts due him, he did possess the power and the right to receive the payments." (Emphasis added.)).

We agree with petitioner that the doctrine of constructive receipt does not require a specific corporate resolution authorizing the compensation. A corporation can act in other ways. For example, the award of compensation could be set in advance under a written contract that was itself authorized by proper corporate procedures. The compensation could be set through the formal act of an agent who had a proper delegation of authority from the corporation. However, petitioner has failed to cite any authority for the proposition that the compensation could be set other than through formal and

verifiable corporate actions.  The controlling shareholder's thought processes or informal oral statements to an outside accountant, which are not timely acted upon and are not timely reflected in the corporation's books and records, do not constitute verifiable corporate actions.  See Lombard & Co. v. Commissioner, T.C. Memo. 1979-297 ("in the absence of any written memoranda, corporate minutes, resolution, or a crediting upon the corporation's books of the amount of salary, we cannot say that Franklin's salary was credited or set aside so as to be constructively received").

Petitioner's reliance on Miller-Dunn v. Commissioner, supra, is also misplaced.  Miller-Dunn was a reasonable compensation case, not a constructive receipt case.  The Court held that amounts actually paid by the corporation during the fiscal year constituted reasonable compensation for prior services, even though no corporate resolution awarding such compensation had been enacted.  The Miller-Dunn case does not consider a timing issue like the one in the case at hand.

The preceding analysis shows that neither Doyce Gentry nor his sons had the right to receive or take the income prior to the end of petitioner's fiscal year.  In addition, unlike Mr. Gentry, who had sole check-writing authority over petitioner's accounts, the sons did not have the power to obtain payment prior to the close of petitioner's fiscal year.  We therefore

sustain respondent's determination denying petitioner a deduction for compensation allegedly accrued but unpaid by the close of petitioner's fiscal year ended July 31, 1994.

Issue 2.  Late-Filing Additions

Petitioner's fiscal years at issue in this case ended on July 31, 1992, 1993, and 1994.  Absent extension, the deadlines for filing petitioner's Federal income tax returns were October 15, 1992, October 15, 1993, and October 17, 1994,[5] respectively. See sec. 6072(b) ("returns made on the basis of a fiscal year shall be filed on or before the 15th day of the third month following the close of the fiscal year").  The parties have stipulated that the returns were delinquently filed on February 9, 1993, June 13, 1994, and March 1, 1995.

Under section 6651(a)(1), there shall be imposed on a taxpayer who fails timely to file an income tax return an addition to tax of 5 percent of the tax due for each month or partial month of the delinquency, not to exceed 25 percent, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect".  Respondent determined a 20-percent addition to tax for petitioner's 4-month delay in filing its 1993 return, and 25-percent additions to tax for the more than 5-month delays in filing its 1994 and 1995 returns.

---

[5]Oct. 15, 1994, fell on a Saturday.  Therefore, petitioner had until the following Monday to file its return.  See sec. 7503.

Petitioner's briefs contained no argument with respect to the additions to tax.

Because the predicate facts for the late-filing additions were stipulated, and petitioner's attorney repeatedly argued at the trial that petitioner relied on its accountant in tax filing matters, we surmise that petitioner challenges the additions on the grounds that it had "reasonable cause" and not "willful neglect" for the failure to file on time due to its reliance on its accountant. Petitioner bears the burden of proof to show "reasonable cause" and not "willful neglect" where the additions to tax were claimed in the notice of deficiency, as they were here. Sanderling, Inc. v. Commissioner, 66 T.C. 743, 757 (1976), revd. in part on other grounds 571 F.2d 174 (3d Cir. 1978); sec. 301.6651-1(c)(1), Proced. & Admin Regs.;[6] Rule 142(a); see Welch v. Helvering, 290 U.S. 111 (1933).

Petitioner has offered no evidence to meet its burden of proof. The Supreme Court made it clear in United States v. Boyle, 469 U.S. 241, 249-250 (1985), that a taxpayer cannot

---

[6]In 1998, Congress enacted sec. 7491(c), which places the burden of production on the Commissioner in connection with any determination of penalties or additions to tax. Sec. 7491(c) applies only to court proceedings arising in connection with examinations commenced after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726. The notice of deficiency in this case was issued on Feb. 26, 1997, which conclusively establishes that the examination was commenced before July 22, 1998. Because it is clear that sec. 7491(c) does not apply here, we need not determine whether respondent has met the burden of production.

avoid late-filing additions to tax merely by showing that he relied on an agent to file his tax returns.

Petitioner also failed to introduce any evidence to show that the delay was caused by its accountant's neglect, as opposed to petitioner's own neglect. We therefore hold that petitioner is liable for the late-filing additions to tax under section 6651(a)(1).

Issue 3. Accuracy-Related Penalties

Section 6662(a) imposes a 20-percent penalty on the underpayment of tax attributable to, among other things, the taxpayer's "negligence or disregard of rules or regulations."[7] Sec. 6662(b)(1). Negligence is defined to include the "failure to make a reasonable attempt to comply" with the tax laws. Sec. 6662(c).

Section 6664(c)(1) contains a defense to the accuracy-related penalty provisions. It provides:

> No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with

---

[7]Respondent argued on brief that petitioner should also be liable for the accuracy-related penalty because of its "substantial understatement of income tax." See sec. 6662(b)(2). However, respondent did not seek the accuracy-related penalties on the grounds of "substantial understatement" in the notice of deficiency. We need not consider whether this alternative ground for supporting the penalty is properly before us, and if so who would bear the burden of proof, because petitioner has failed to meet its burden of proof on the negligence ground stated in the notice of deficiency.

respect to such portion.

Respondent's determination in a negligence case is presumptively correct, and petitioner has the burden of proving that it was not negligent, or that there was "reasonable cause" for the error, and that it acted "in good faith":[8]

> The section 6653(a) additions[9] involve negligence or intentional disregard of rules and regulations. The burden of proof as to such additions is upon petitioners. * * * They have submitted no evidence whatever in this respect. These additions must therefore be sustained.

Lair v. Commissioner, 95 T.C. 484, 493 (1990). Petitioner introduced no evidence to meet its burden of proof to show "reasonable cause" for the errors or to show that it acted in good faith. We therefore sustain respondent's determination that petitioner is liable for the accuracy-related penalty on the deficiencies.

To give effect to the foregoing,

Decision will be entered

under Rule 155.

--------

[8]See supra note 6.

[9]The negligence accuracy-related penalty was formerly an addition to tax under former sec. 6653(a). The negligence provisions were revised and moved to sec. 6662 by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c)(1), 103 Stat. 2399.